26 So.2d 361

BOARD OF SUP'RS OF LOUISIANA STATE UNIVERSITY et al. v. HART et al. (UNITED STATES, Intervener).

No. 37897.

April 22, 1946.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Leonard Sarner, Sp. Assts. to Atty. Gen. (Herbert W. Christenberry, U. S. Atty., and Edward J. Boyle, Asst. U. S. Atty., both of New Orleans, of counsel), for the United States.

Benj. B. Taylor, of Baton Rouge, and John H. Tucker, Jr., of Shreveport (Taylor, Porter, Brooks & Fuller, of Baton Rouge, and Tucker, Bronson & Martin, of Shreveport, of counsel), for appellee.

ROGERS, Justice.

This suit was brought by the Louisiana State University to recover $75,000 allegedly overpaid for the purchase of the furniture and fixtures in the Bienville Hotel in the City of New Orleans. Among the defendants is James Monroe Smith, President of the University, when the sale took place. The suit was filed on July 25, 1939, and, on the same day, a writ of attachment was issued under which considerable property of Smith was seized by the sheriff. Subsequent to the filing of the suit, settlements were effected with certain defendants, as a result of which the original claim of the University was reduced from $75,000 to $25,600.

On February 13, 1940, the United States Commissioner of Internal Revenue assessed against the defendant Smith and his wife income taxes, penalties and interest for the years 1936, 1937 and 1938, amounting in all to the sum of $305,756.31. On February 15, 1940, the list containing the assessments against Smith and his wife was received from the Commissioner of Internal Revenue by the Collector of Internal Revenue for the District of Louisiana who, on the same day, served notice and demand for payment upon Smith and his wife. On February 16, 1940, notices of the tax liens covering the assessments were filed in the offices of the clerks of the United States District Courts for the Eastern and Western Districts of Louisiana and also in the offices of the clerks of Court and ex-officio recorders of mortgages for the Parishes of East Baton Rouge, Lafayette, St. James and Assumption, State of Louisiana.

On January 20, 1943, the United States intervened in the suit, alleging that Smith and his wife were indebted to it for income taxes and penalties covered by the

assessments and notices of liens referred to. The United States claimed that it should be paid by preference and priority over the Louisiana State University and all other persons out of the proceeds of the sale of the property seized under the writ of attachment. On November 22, 1944, a preliminary default was entered on behalf of the United States against Smith. On December 12, 1944, answering the suit, Smith admitted an indebtedness to plaintiff of $25,600. On the same day, the United States introduced evidence in confirmation of its preliminary default. On April 10, 1945, the judge of the District Court rendered judgment in favor of the Louisiana State University for $25,600, maintained its writ of attachment, and recognized its lien and privilege on the property seized. The judgment further ordered that the Louisiana State University be paid the amount of its claim by preference and priority over all other persons, including the United States. From this judgment the United States appealed.

The only question presented for decision on this appeal is whether the liens of the United States for income taxes and penalties are entitled to priority and payment over the lien and privilege of the Louisiana State University resulting from an earlier attachment maintained by a subsequent judgment.

The income tax liens of the United States arose after the attachment of the Louisiana State University was levied but before judgment was rendered maintaining the attachment. It is the position of the United States that at the time its liens attached the University had at most an inchoate, unperfected title by virtue of its attachment, and that as between the University, as the holder of a prior inchoate lien, and the United States, as a tax claimant, the United States has priority regardless of whether the inchoate lien was subsequently perfected. In support of its position, the United States relies on Sections 3670 and 3671 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code §§ 3670, 3671. Section 3670 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or additional to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides: "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

The liens created by Sections 3670 and 3671 of the Internal Revenue Code are general and not priority liens. But it is argued on behalf of the United States that those statutory liens are

analogous to the priority rights established by Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191. And it is said that the analogy irrefutably leads to the conclusion that the lien of the United States' for income taxes must be satisfied before the judgment obtained by the Louisiana State University. But the analogy is not complete. Section 3466 of the Revised Statute does not create a lien. It merely establishes priority which is limited to the particular state of things specified. Section 3466 is not applicable to this case because none of the conditions therein specified as giving rise to the priority are present here. There have been no insolvency proceedings, voluntary assignment or proceedings of any nature whatever whereby the debtor has been found insolvent and his estate "given to any person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear." Bramwell v. U. S. Fidelity Co., 269 U.S. 483, 46 S.Ct. 176, 178, 70 L.Ed. 368; United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638; Equitable Trust Co. v. Connecticut Brass & Manufacturing Co., 2 Cir., 290 F. 712; United States v. City of Greenville, 4 Cir., 118 F.2d 963.

Section 3672, 26 U.S.C.A. Int.Rev.Code, provides with respect to the liens referred to in Sections 3670 and 3671 as follows:

"(a) Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) * * * In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; * * *."

Under the provisions of Section 3671 of the Internal Revenue Code hereinabove quoted, the lien of the United States in this case arose on February 15, 1940, the date upon which the Collector of Internal Revenue at New Orleans received from the Commissioner of Internal Revenue in Washington the list of assessments made against Smith and his wife. It is the contention of the United States that on February 15, 1940, when its lien arose, the Louisiana State University was not a mortgagee, a pledgee, a purchaser or a judgment creditor, and that, therefore, whatever lien and privilege it might have resulting from its attachment is subordinate to the lien of the United States.

The United States relies on the case of MacKenzie v. United States, 9 Cir., 109 F.2d 540, but a reference to that case shows that the lien of the government arose prior to the issuance of the attachment, while in this case it arose subsequent to the attachment.

In the case of United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, which arose in the Eastern District of Louisiana, the Supreme Court of the

United States held that innocent third persons, dealing with immovable property of the tax debtor to the United States after the assessment list of the Commissioner of Internal Revenue had been filed and certified to the Collector of Internal Revenue at New Orleans, were not protected by the laws of registry of Louisiana governing liens, mortgages and privileges affecting such property. But that decision was rendered before the amendment of Section 3186 of the Revised Statutes, now Section 3672 of the Internal Revenue Code, adopted in 1913. Subsequently, the section was amended so as to add pledgees to the class of persons protected by the provisions of the section. The purpose of those amendments was to protect innocent third persons within the classes mentioned from the effect of liens, the existence of which could be ascertained only from the Collector of Internal Revenue. To that extent the amendments relaxed the rule announced in the Snyder case.

It has been said that the lien created by Section 3670 of the Internal Revenue Code is a general lien, in many respects resembling a mortgage. City of Winston-Salem v. Powell Paving Co., D.C., 7 F.Supp. 424. It has also been stated that it is in the nature of a judgment. United States v. Canfield, D.C., 29 F.Supp. 734.

It has often been held that the lien of the United States, under Sections 3670 and 3671, is subordinate to a prior mortgage. This has been the consistent ruling of the Federal courts. Detroit Bank v. United States, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304; United States v. Beaver Run Coal Co., 3 Cir., 99 F.2d 610; Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311; Exchange Nat. Bank of Tulsa v. Davy, D.C., 13 F.Supp. 226. This subordinate position to prior mortgages was held to apply in the case where the tax lien arose before the mortgage but was not properly recorded until after the mortgage, even when the mortgagee had knowledge of the existence of the unrecorded tax lien. United States v. Beaver Run Coal Co., supra.

An equitable lien prior in time to the tax lien of the government, but converted into a legal lien after the government's lien arose was maintained as superior to the tax lien. Exchange Nat. Bank of Tulsa v. Davy, supra.

In the case of New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473, 477, decided in 1944, the Court upheld the priority of a prior equitable lien. In that case, a contractor defaulted on an N.H.A. contract, and the casualty company, as surety, paid labor, material men and all other costs for completing the contract and was subordinated to the rights of the payee and to N.H.A. Thereafter the collector filed a notice of tax lien against the defaulting contractor, and the contest arose over the funds due under the contract withheld by the N.H.A. The Court held that Section 191, 31 U.S.C.A. (the priority statute—

R.S. § 3466) had no application since there was no insolvency; that the surety had an equitable lien resulting from its payment of claimants against the contractor and was subrogated to the rights of the claimants it·paid. It was further held that the equitable lien of the surety related back to the date of ¹the suretyship contract, and was superior to the subsequent tax lien of the United States.` In the course of its opinion the Court held: "The rights of the ·Collector of Internal Revenue can rise no higher than those of the taxpayer whose right to property is sought to be levied :upon. * * *"

■ It will, therefore, appear that un-¹ ·der· the Federal statutes hereinabove referred to and from the decisions of the Federal courts interpreting the statutes, ·the general lien of the United States is inferior and postponed in payment to prior ·mortgages, equitable liens and encumbrances, and that the rights of the United ·States under the statutory provisions attach to the property of the tax debtor in ·the condition as it exists at the time the :tax lien arises.

■ It is unnecessary to determine ·whether the tax liens involved herein have the effect of a judgment lien or of a mortgage lien. In either case the important ·question to be determined is whether the ·liens of the United States, which arose between the date of the attachment of the Louisiana State University and the date of the judgment which maintained it, are

superior or subordinate to the lien and privilege resulting from the attachment.

■ The nature of the rights flowing from an attachment in Louisiana must be determined by the law of Louisiana. Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621; United States v. Waddill, Holland & Flinn, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294; City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399. Thus, the Supreme Court of the United States held, in United States v. State of Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356, that it was bound by the decision of the Texas courts in the construction of Texas statutes.

■ Under the law of Louisiana, the lien and privilege resulting from an attachment when recognized by judgment, relates back to the date of the seizure and is superior to or primes any intervening mortgages, liens, encumbrances, pledges or purchases. Code Practice, Article 722; Civ. Code, Arts. 3184, 3185; Emerson v. Fox, 3 La. 178; Tufts v. Carradine, 3 La.Ann. 430; Beck v. Brady, 6 La.Ann. 444; Cockran v. Walker, 10 La.Ann. 431; Harris v. Andrews, 20 La.Ann. 561.

Article 724 of the Code of Practice provides that provisional seizures and sequestration give no privilege until they are maintained by judgment. The term "provisional seizures" contained in the article is an erroneous translation of the French text of the article which reads: "Les saisie—arrets" (attachment). This·error

in translation was noted soon after the code was adopted in the case of Emerson v. Fox, 3 La. 178, decided in 1831. In that case this Court refused to give the French text effect over Articles 264 and 265 of the Code of Practice which declare that the property attached "shall be subject to satisfy such judgment as may be rendered against the defendant." The doctrine announced in Emerson v. Fox was extended and amplified in the case of Tufts v. Carradine, 3 La.Ann. 430, where it was expressly held that an attachment gives a privilege to the creditor on the property attached.

It is true that in the case of Beck v. Brady, 6 La.Ann. 444, cited on behalf of the United States, it was held that an attachment did not create such a privilege as would authorize the issuance of a sequestration. But a writ of sequestration is a conservatory writ and the Court, in deciding the case, made the following pertinent observation: "If the property was properly attached, the process is ample to secure the plaintiffs; if not, they do not pretend that the sequestration can be maintained." The Court, in its opinion, referred to the erroneous translation of the terms "provisional seizure" in Article 724 of the Code of Practice and stated that it was intended for "attachment." This statement by the Court should be read in connection with its statement made in the case of Beck v. Brady, 7 La.Ann. 1, when the case again came before the Court. There

the Court said: "It is strenuously contended, that the French text of article 724 of the Code of Practice, conflicts with our view of the effect of articles 264 and 265 of that code. If so, we would say with the late Chief Justice Martin, in the case of Emerson v. Fox, et al.: 'We cannot allow it to prevail in a manner that will contradict the evident and manifest intention of the Legislature, in these two articles, and enable the defendants to destroy the effect of the attachment.'"

The later case of Beck v. Brady approves the ruling in Emerson v. Fox and Tufts v. Carradine and expressly maintains the priority of an attachment over privileges, liens or mortgages subsequently arising.

In view of the Code articles and jurisprudence to which we have hereinabove referred, it can not be disputed that, under the law of this State, an attachment gives the attaching creditor rights which are superior to mortgages, privileges and liens arising subsequent to the attachment but prior to the judgment recognizing the attachment. While a lien and privilege resulting from an attachment in its strictest sense is not a judgment, it is specific and attaches to the property from the moment of the seizure, and, under the settled jurisprudence of this State, is superior to a lien, mortgage or privilege thereafter arising, and the situation is not altered if the judgment recognizing the attachment is rendered subsequent to the intervening lien, mortgage or privilege.

In Conard v. Atlantic Insurance Co. of New York, 1 Pet. 386, 7 L.Ed. 189, it was stated that it has never been decided that the priority of the United States will divest a specific lien attached to anything whether it be accompanied by possession or not.

It is undisputed that Section 3670 of the Internal Revenue Code creates a tax lien but does not give it priority. It is also undisputed that the general lien created by that statute is inferior to prior mortgages or equitable or legal liens and encumbrances. It would seem to be anomalous, therefore, to say that if a mortgage intervened between the date the attachment was obtained by the Louisiana State University and the date the tax lien of the United States arose, the privilege or lien of the University would be superior to the mortgage, which, in turn, would be superior to the tax lien of the United States, but that the tax lien of the United States would be superior to the privilege of the University. That, however, is the situation that would result if the argument on behalf of the United States is followed to its logical conclusion. We do not think the law sanctions such an anomalous situation.

As we have hereinabove pointed out, the jurisprudence of this State is consistent in holding that the lien and privilege resulting from an attachment, when recognized by judgment on the main demand, relates back to the date of the attachment. The tax lien of the United States attached to the property of Smith in the condition in which the property was at the time the lien arose, and at that time Smith's property was impressed with the lien and privilege resulting from the attachment obtained by the Louisiana State University and was in the custody of the Court. In these circumstances, the University must be preferred to the United States in the disposition of the proceeds of the sale of the property seized and held under the writ of attachment.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.