[Civ. No. 3948. Fourth Dist. Sept. 17, 1949.]

ALBERTA WINTHER et al., Plaintiffs, v. WILTON M. MORRISON, Defendant and Respondent; UNITED STATES OF AMERICA, Defendant and Appellant.

[Civ. No. 3949. Fourth Dist. Sept. 17, 1949.]

ROBERT M. REWICK et al., Plaintiffs, v. GEORGE STYLIANO et al., Defendants; UNITED STATES OF AMERICA, Defendant and Appellant; WILTON M. MORRISON, Defendant and Respondent.

[Civ. No. 3950. Fourth Dist. Sept. 17, 1949.]

ROBERT M. DeWITT et al., Plaintiffs, v. GEORGE STYLIANO et al., Defendants; UNITED STATES OF AMERICA, Defendant and Appellant; WILTON M. MORRISON, Defendant and Respondent.

[Civ. No. 3951. Fourth Dist. Sept. 17, 1949.]

RAY C. CAVELL et al., Plaintiffs, v. GEORGE STYLIANO et al., Defendants; UNITED STATES OF AMERICA, Defendant and Appellant; WILTON M. MORRISON, Defendant and Respondent.

Theron Lamar Caudle, Assistant Attorney General of the United States, Ellis N. Slack, A. F. Prescorr, Hilbert P. Zarky, Helen Goodner, Special Assistants to the Attorney General of the United States, James M. Carter, United States Attorney, E. H. Mitchell, James C. R. McCall, Assistant United States Attorneys, and Eugene Harpole, Special Attorney for Bureau of Internal Revenue, for Defendant and Appellant.

McInnis & Hamilton and Renwick Thompson for Defendant and Respondent.

MUSSELL, J.—These four cases have been consolidated for the purpose of appeal and are presented on an agreed statement of facts. The appeals are by the United States of America from judgments involving the relative priority of an attachment lien of defendant Morrison, and a subsequent lien of the United States for taxes.

George Styliano and his wife, Genell Styliano, owned four parcels of real property in San Diego County. Three of these were mortgaged, one to Robert M. Rewick, et al., one to Robert M. DeWitt, et al., and one to Ray C. Cavell, et al. The fourth parcel had been sold and conveyed by the Stylianos to Alberta Winther and Margaret G. Young, and there was a balance owing to the Stylianos on the purchase price.

The Stylianos were indebted also to defendant Wilton M. Morrison on a promissory note. On October 17, 1946, Morrison brought an action against the Stylianos on this note and on the same day he procured the issuance of a writ of attachment in the action, pursuant to which, during the month of October, 1946, the interests of the Stylianos in the various parcels of real estate involved in the four actions were attached. Morrison recovered a judgment against the Stylianos in the sum of $78,938.55 on April 24, 1947, and recorded an abstract thereof in the office of the County Recorder of San Diego County on May 2, 1947.

After the levy of the Morrison attachment, but before the recovery of his judgment and the recording of the abstract, certificates of assessment of federal taxes were received in the office of the Collector of Internal Revenue at Los Angeles, and notices of federal tax liens against all property belonging to the Stylianos were filed in the office of the County Recorder of San Diego County. The notices were filed for record on December 3, 1946, December 5, 1946, December 10, 1946, and January 22, 1948.

In the Winther case the action was to determine the interests of the purchasers in the property, and the balance thereon had been deposited in court. The trial court ordered that the $1,500 so deposited be paid to Morrison in satisfaction *pro tanto* of the judgment lien, and held that the United States had a lien on the balance which was inferior to that of Morrison. The Rewick, DeWitt and Cavell cases were actions for foreclosure of mortgages and the plaintiffs therein recovered judgments in which the court ordered the mortgaged property sold and the proceeds applied as follows: First, to the payment of the respective mortgage judgments and costs; second, to the satisfaction of the Morrison judgment lien *pro tanto*; third, any balance to be paid to the United States on its federal tax lien. In each of the cases Morrison asserted his lien by virtue of the attachment and judgment and no question is raised as to the regularity of the attachment proceedings or judgment, or the correctness of the judgments of the trial court respecting the claims of the plaintiffs in any of the four actions.

The sole question involved on this appeal is whether the court erred in holding that the tax claims of the United States were subordinate to the attachment and judgment lien of defendant Morrison.

Section 542a of the Code of Civil Procedure provides in part that "[t]he lien of the attachment on real property attaches and becomes effective upon the recording of a copy of the writ, together with a description of the property attached, and a notice that it is attached with the county recorder of the county wherein said real property is situate." It is further provided that "[t]he attachment . . . shall be a lien upon all real property attached for a period of three years after the date of levy unless sooner released or discharged either as provided in this chapter, or by dismissal of the action." ▮ Since it is conceded that the attachment herein was properly issued and properly levied upon the property, it is evident that Morrison perfected a lien thereon which secured and insured the payment to him of any judgment that was recovered by him in the action, insofar as the property attached could be applied to the judgment. (*Halstead* v. *Halstead*, 72 Cal.App.2d 832, 836 [165 P.2d 513].) ▮ The lien attached immediately upon the levy of the attachment. (Code Civ. Proc., § 542a, *supra*; *Ritter* v. *Scannell*, 11 Cal. 238, 240 [70 Am.Dec. 775].) "It is, in effect, an incipient execution—an execution, so to speak, in advance

of trial and judgment." (3 Cal.Jur. 402; *Porter* v. *Pico,* 55 Cal. 165, 174.) ■ A sheriff's deed executed in pursuance of an execution sale under a judgment rendered in an attachment suit relates back to and takes effect from the levy of the attachment, if the levy was such as to create a lien. (*Martinovich* v. *Marsicano,* 150 Cal. 597, 600 [89 P. 333, 119 Am.St.Rep. 254].) ■ As was said in *Balzano* v. *Traeger,* 93 Cal.App. 640, 643 [270 P. 249] : "When the attachment is upon real property and the judgment lien is established, the attachment lien merges in the lien of the judgment and thereafter the only effect of the lien of such attachment is to preserve the priority thereby acquired. This priority is continued and enforced under the judgment." ■ The lien acquired by an attachment is a vested interest affording specific security for satisfaction of the debt put in suit and is a special interest which an attaching creditor has in property held in custody of the sheriff sufficient to support an action for conversion. (*McCaffey C. Co., Inc.* v. *Bank of America,* 109 Cal.App. 415, 423, 424 [294 P. 45].)

The lien of the United States in the instant action was placed upon the property of the Stylianos after the attachment lien was perfected under the laws of California. It is the position of the United States that at the time its lien attached, Morrison had only a potential right of a contingent lien and that such a lien is inchoate and is not sufficiently specific or perfected to prevent a subsequent federal tax lien from attaching to the property with priority. In support of its position the United States relies on sections 3670, 3671, and 3672 of the Internal Revenue Code [53 Stats. 448 et seq.], 26 United States Code Annotated. Section 3670 provides : "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3671 is as follows : "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Section 3672 provides, with respect to the liens referred to in sections 3670 and 3671, that : "Such lien shall not be valid

as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—— (1) In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; . . .''

Under the provisions of section 3671, *supra,* the tax lien in this case arose on December 3d, 5th and 10th, 1946, and on January 22, 1948, the dates on which notices of tax liens were filed for record in San Diego County. It is argued by the United States that when its lien arose Morrison was not a mortgagee, a pledgee, a purchaser or a judgment creditor, and that his attachment lien is subordinate to the tax lien. In support of its argument appellant relies principally upon the case of *MacKenzie* v. *United States,* 109 F.2d 540, in which case it appears that the assessment list was received by the collector in June, 1931, the attachment was issued and levied upon the property on September 4, 1931, and on May 28, 1932, judgment was recovered in the attachment suit. It was held in that case that the lien of the government for taxes was prior to that of the judgment creditor. Since the tax lien arose prior to the issuance of the attachment it was not necessary to the decision to pass upon the priorities of tax and attachment liens[a] where the tax lien, as here, arose after the levy of the attachment. The factual situation here involved was not before the court.

■■■■ The liens created by sections 3670 and 3671 of the Internal Revenue Code are general and not priority liens. (*Board of Supervisors of La. State University* v. *Hart,* 210 La. 78 [26 So.2d 361, 363].) There is no provision in either section indicating that the liens for taxes have a priority over attachment liens placed on the property prior to the time when the tax liens arise. The tax lien is upon ''all property and rights to property, whether real or personal, belonging to such person.''

Whatever interest the Stylianos had in the real property involved, at the time of the tax lien, was subject to the attachment, and any mortgage or conveyance by them would be subject to the rights of an attaching creditor. It follows that the tax lien attached to whatever ownership the Stylianos had in the property at the time the lien arose and that the government could acquire only such title as the Stylianos then had. As was said in *New York Cas. Co.* v. *Zwerner,* 58 F.Supp. 473,

477: "The rights of the Collector of Internal Revenue can rise no higher than those of the taxpayer whose right to property is sought to be levied upon; . . ."

It should also be noted that while section 3672 of the Internal Revenue Code provides that the tax lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice has been filed by the collector, it does not provide that the mortgagee shall be one who has recorded his mortgage; it does not expressly state that after notice is filed the lien in favor of the government shall be subject to all existing mortgages, or that the lien shall be superior to them. The priority of liens as between mortgagees, pledgees, purchasers and judgment creditors is not therein provided for. As we read the section its purpose is to afford notice to those named, of the existence of tax claims, before dealing with the property. (*Exchange Nat. Bank of Tulsa* v. *Davy,* 13 F.Supp. 226, 228.)

In *Board of Supervisors of La. University* v. *Hart,* 210 La. 78 [26 So.2d 361], the precise question here involved was passed upon. In that case the attachment was levied and the attachment lien arose on July 25, 1939. Thereafter the assessment list was received by the collector on February 15, 1940, and notice was filed on February 16, 1940. Thereafter judgment was rendered in the attachment case.

The court held that the nature of the rights flowing from an attachment in that state (Louisiana) must be determined by the law of that state; that the lien of the attachment when recognized by judgment relates back to the date of the seizure and is superior to or primes any intervening mortgages, liens, encumbrances or purchases; that while a lien and privilege resulting from an attachment in its strictest sense is not a judgment, it is specific and attaches to the priority from the moment of the seizure and is superior to a lien, mortgage or privilege thereafter arising and the situation is not altered if the judgment recognizing the attachment is rendered subsequent to the intervening lien, mortgage or privilege; that the tax lien of the United States attached to the property of Smith (against whom the assessment was levied) in the condition in which the property was at the time the lien arose; that at the time Smith's property was attached by the Louisiana State University it was in the custody of the court and that the tax lien was subject to the attachment lien. The court considered the MacKenzie case, *supra,* but did not consider

it to be controlling as the tax lien in that case arose prior to the issuance of the attachment.

In *United States* v. *Yates* (Tex.Civ.App.), 204 S.W.2d 399, the attachment was levied on May 15, 1944. Thereafter on May 26, 1944, the assessment list was received and notice of the lien was filed. Thereafter judgment was obtained. The court followed *Board of Supervisors of La. University* v. *Hart, supra,* and held that the lien of the attachment was prior to the lien of the United States for taxes.

In *United States* v. *52.11 Acres of Land,* 73 F.Supp. 820 (Missouri Dist. Court), it was held that money paid into registry of court by the United States in satisfaction of land-owners' respective judgments for taking of land by the United States, and representing indebtedness of landowners to third persons under the landowners' contracts with the United States, was subject to lien in favor of third person's creditor superior to Internal Revenue Collector's lien for federal taxes assessed against third person, where a creditor obtained liens by virtue of garnishment proceedings in 1942 and 1945 and notice of tax liens were filed thereafter.

The rights acquired by Morrison by virtue of his attachment at a time when the property was free of tax liens must be determined by the law of California. (*Gray* v. *Little,* 97 Cal.App. 442, 450 [275 P. 870].) The determination of what constituted the property of the Stylianos on the date of establishment of the tax lien is primarily a matter of state law and the Collector of Internal Revenue can reach only such property rights as the Stylianos had when the lien arose. (*United States* v. *Winnett,* 165 F.2d 149, 151.) Whatever rights the Stylianos had in the real property involved were subject to the valid subsisting attachment lien of Morrison and the tax lien of the United States was not entitled to priority over it.

Judgments affirmed.

Griffin, Acting P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 14, 1949.