## UNITED STATES *v.* SECURITY TRUST & SAVINGS BANK, EXECUTOR, ET AL.

Nos. 10, 11, 12 and 13.  Argued October 16, 1950.—Decided November 13, 1950.

*Helen Goodner* argued the cause for the United States. With her on the brief were *Solicitor General Perlman,*

*Assistant Attorney General Caudle, Ellis N. Slack* and *Hilbert P. Zarky.*

*Thomas M. Hamilton* submitted on the record for respondents.

MR. JUSTICE MINTON delivered the opinion of the Court.

The question presented here is whether a tax lien of the United States is prior in right to an attachment lien where the federal tax lien was recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtained judgment.

On October 17, 1946, Wilton M. Morrison sued George and Genell Styliano on an unsecured note. Pursuant to §§ 537 and 542 of the California Code of Civil Procedure, [1] Morrison procured the attachment of four parcels of real estate owned by the Stylianos in San Diego County. On April 24, 1947, Morrison obtained judgment and it was recorded in the office of the Recorder of San Diego County on May 2, 1947. Meanwhile, on December 3, 5, and 10, 1946, the United States had filed notices of federal tax liens in the same office. [2]

Subsequently, four suits were brought in the Superior Court of San Diego County involving the four parcels of land upon which Morrison had procured the attachment. Morrison and the United States were made parties defendant in each of these suits. The first suit was brought to quiet title to one of the parcels of real estate. The Stylianos had sold this parcel to the plaintiffs of the suit, who paid the balance of the purchase price into court. The other three suits were to foreclose separate mortgages on the other three parcels. The Superior Court ordered the balance of the purchase price and any surplus

---

[1] Deering's Cal. Code Civ. Proc. Ann., 1941, §§ 537 and 542.

[2] Notice of a further lien in the sum of $412.18 was filed on January 22, 1948, but as to this the Government does not claim priority.

remaining from the foreclosure sales after the mortgagees received payment in full to be applied first in payment of Morrison's judgment lien, and secondly in payment of any federal tax liens.[3]

The District Court of Appeal for the Fourth Appellate District affirmed. 93 Cal. App. 2d 608, 209 P. 2d 657. The Supreme Court of California declined to hear the case, and we granted certiorari. 339 U. S. 947.[4] The four cases were consolidated below for purposes of appeal, and Morrison's claims of priority were treated as a single issue. They are treated here in the same manner.

Section 537 of the California Code of Civil Procedure provides that a plaintiff may have the property of the defendant attached at any time "as security for the satisfaction of any judgment that may be recovered." Section 542a provides: "The lien of the attachment on real property attaches and becomes effective upon the recording of a copy of the writ, together with a description of the property attached, and a notice that it is attached with the county recorder of the county wherein said real property is situate . . . . The attachment whether heretofore levied or hereafter to be levied shall be a lien upon all real property attached for a period of three years after the date of levy unless sooner released or discharged either as provided in this chapter, or by dismissal of the action, or by the filing with the recorder of an abstract of the judgment in the action."

The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is

---

[3] The Government also disclaims any priority over the mortgages foreclosed in these proceedings.

[4] Morrison died while the case was pending on appeal to the District Court of Appeal, and the Security Trust and Savings Bank as executor of his last will and testament was substituted.

entitled to weight, it is subject to reexamination by this Court. On the other hand, if the state court itself describes the lien as inchoate, this classification is "practically conclusive." *Illinois* v. *Campbell,* 329 U. S. 362, 371. The Supreme Court of California has so described its attachment lien in the case of *Puissegur* v. *Yarbrough,* 29 Cal. 2d 409, 412, 175 P. 2d 830, 831, by stating that, "The attaching creditor obtains only a potential right or a contingent lien . . . ." Examination of the California statute shows that the above is an apt description. The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists.

Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison did not have a judgment lien. He had a mere *"caveat* of a more perfect lien to come." *New York* v. *Maclay,* 288 U. S. 290, 294.

The liens asserted by the United States stem from 53 Stat. 448, 449, 26 U. S. C. §§ 3670, 3671, 3672. Section 3670 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides that the lien arises when

the assessment lists are received by the Collector unless some other date is specified by law. Section 3672 provides that the lien shall not be valid against mortgagees, pledgees, purchasers or judgment creditors, until notice thereof has been filed in the office provided by the law of the state for such filing—in this case, the office of the Recorder of San Diego County.

In cases involving a kindred matter, *i. e.*, the federal priority under R. S. § 3466,[5] it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. *Illinois* v. *Campbell, supra,* 374. If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here. Accordingly, we hold that the tax liens of the United States are superior to the inchoate attachment lien of Morrison, and the judgment of the District Court of Appeal for the Fourth Appellate District is reversed.

*Reversed.*

MR. JUSTICE JACKSON, concurring.

I am persuaded that we are required to hold the tax lien of the Government superior to the California attachment. While we should accept the law of California as

---

[5] .R. S. § 3466. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

its court has declared it, the federal question remains whether it is in conflict with 26 U. S. C. §§ 3670–72, 53 Stat. 448 as amended, 53 Stat. 882. The history of this tax lien statute indicates that only a judgment creditor in the conventional sense is protected.

*United States* v. *Snyder,* 149 U. S. 210 (1893), was decided at a time when the forerunner of the present statute, § 3186 of the Revised Statutes as amended by § 3 of the Act of March 1, 1879, provided:

> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment-list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto, upon all property and rights to property belonging to such person." 20 Stat. 327, 331.

The *Snyder* case held, in interpreting the above statute along with Art. I, § 8 of the Constitution, that the lien created by that statute was a valid binding lien even against a bona fide purchaser for value without knowledge or notice of the existence of such a lien.

Thereafter the statute was amended and a proviso added which said: ". . . That such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector . . . ." in the appropriate place for filing. 37 Stat. 1016. The House Report accompanying the proposed amendment, H. R. Rep. No. 1018, 62d Cong., 2d Sess. 2 (1912), said in part, after citing the above case:

> ". . . the lien is so comprehensive that it covers all the property and rights to property of the delinquent situated anywhere in the United States, and any person taking title to real estate is subjected to the

impossible task of ascertaining whether any person, who has at any time owned the real estate in question, has been delinquent in the payment of the taxes referred to while the owner of the real estate in question. The business carried on under the internal-revenue law may be at a great distance from the property affected by this secret lien, but this will not relieve the property from the lien."

In 1938, *United States* v. *Rosenfield*, 26 F. Supp. 433 (D. C. E. D. Mich., S. D.), held that a bona fide purchaser for value of shares of stock from a seller against whom notice of lien for federal income taxes had been duly filed prior to the sale, took subject to the lien even though the purchaser did not have notice or knowledge of such lien. As a direct result of this decision, the statute was again amended, this time to include *pledgees* and the exception in case of securities as now found in 26 U. S. C. § 3672 (b) (1). The reason for this amendment is disclosed in the Committee Report accompanying the Revenue Bill of 1939. H. R. Rep. No. 855, 76th Cong., 1st Sess. 26 (1939). This report says, in part:

". . . While it is true that the filing of the notice of the tax lien may constitute notice in the case of real property, it is inequitable for the statute to provide that it constitutes notice as regards securities. . . . An attempt to enforce such liens on recorded notice would in many cases impair the negotiability of securities and seriously interfere with business transactions. . . ."

My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute and no others.