GREAT AMERICAN INDEMNITY CO.
v.
UNITED STATES et al.
No. 3841.

United States District Court,
W. D. Louisiana, Alexandria Division.
April 6, 1954.

Grove Stafford, Stafford & Pitts, Alexandria, La., for plaintiff.

Mason P. Gilfoil, Asst. U. S. Atty., Shreveport, La., for defendants.

HUNTER, District Judge.

This is a suit in the nature of a bill of interpleader brought under the terms of 49 Stat. 1096, U.S.C., Title 28, Sections 1335, 1339 and 2361, and under the terms of Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and for a declaratory judgment under the provisions of 49 Stat. 1027, U.S.C., Title 28, Sections 2201 and 2202.

The amount in controversy exceeds $3,000, and there is a diversity of citizenship, not only between the plaintiff and all defendants, but also among the defendants themselves, as is required by the statutes mentioned above.

One of the defendants, Alexandria Insulation Company, entered into a written contract with the Grant Parish School Board, obligating itself to build the Georgetown School. The contract was recorded as required by the law of the State of Louisiana. The job was bonded, and plaintiff, Great American Indemnity Company of New York, a nonresident insurance company, became surety on the bond. The job was completed, was accepted and the written acceptance was recorded in the office of the Clerk of Court of Grant Parish, Louisiana.

Within the time allowed by Louisiana law, some twenty or more creditors, who

had sold materials or who had performed services on the school, filed liens for various amounts, totalling something in excess of $22,000. This amount was considerably in excess of the amount still due to the contractor by the School Board. The latter amount was $14,-540.07.

About the same time the creditors were filing their liens, the United States of America, through the Treasury Department, levied against the fund in the hands of the School Board, and filed a lien with the Clerk of Court of Grant Parish, claiming that the contractor owed it something in excess of $8,000. Plaintiff, in its complaint, challenged the validity of the lien and of the levy.

Plaintiff deposited in court $5,500 and asked for an order directing the Grant Parish School Board to deposit into the hands of the court the balance due to the contractor stating that the two sums taken together would be sufficient to pay all parties holding valid liens.

In the prayer of its complaint, the plaintiff asked for the following, and other, relief:

1. That it be permitted to deposit $5,500 with the Clerk of Court to be retained by him pending the further orders of court.

2. That the Grant Parish School Board be ordered and directed to deposit with the Clerk of Court the sum of $17,-504.07, to be retained by him, pending the further orders of the court.

3. That the rights of the various parties, including the materialmen and laborers who had filed claims be litigated in concursus and be fixed; that the laborers and materialmen finally be decreed to be entitled to be paid out of the funds deposited in court by preference over all other persons and particularly by preference over the United States of America.

4. That the lien and the levy of the United States of America be decreed to be of no effect and that they be ordered cancelled.

5. That plaintiff's bond be decreed to run in favor of the School Board, and the laborers and materialmen, and no other persons; that the bond be cancelled upon laborers and the materialmen.

6. That an injunction issue prohibiting the further prosecution of the existing suit, as well as the filing of new ones.

The court signed an order accepting plaintiff's deposit of $5,500 and directing the Grant Parish School Board to deposit with the Clerk of Court the balance that it owed to the contractor, and ordering all creditors claiming liens, not including, however, the United States of America, to show cause why an injunction should not issue restraining the prosecution of suits. A hearing on the demand for an injunction was set for August 28, 1952.

All parties, including the United States of America, were served with process, prior to the date fixed for the hearing.

When the case was called, on the date set in the order, that is, August 28, 1952, the late Judge Porterie, granted plaintiff a preliminary injunction as prayed for. In addition, *but not at plaintiff's request*, Judge Porterie ordered the Clerk to distribute to the various creditors who had filed liens, and whose claims plaintiff did not dispute, the full amount due to them. The effect of this order was to exhaust the fund in the hands of the Clerk, which had been made up of plaintiff's voluntary deposit of $5,500, and the deposit made by the School Board under the prior order of court ($17,540.07).

Naturally, this order, not objected to by plaintiff, was pleasing to all creditors except the Treasury Department, which was not even served.

The United States of America, through its attorney, has filed a motion to vacate the court's judgment of August 28, 1952, the idea being, we take it, to attempt to get the funds back into the hands of the court. This motion was

served on no one but the plaintiff, Great American Indemnity Company, the only party who could not comply, because it received no part of the distribution. Coupled with the motion is an answer and a cross-claim, in which the government says that the contractor, Alexandria Insulation Company, deducted from the wages it paid to its employees, withholding and unemployment compensation taxes amounting to more than $8,500, but that it failed to pay this amount to the Collector of Internal Revenue as required by law. In the cross-claim, it asked that, as to the amount so collected and withheld, but not paid, it be recognized as a creditor of the contractor, and as such, entitled to a first lien and privilege on the fund and under the bond given by the contractor for the faithful performance of the building contract. Finally, the United States of America asks for a judgment against the surety on the policy for such amounts as may be due.

Plaintiff has filed a motion to dismiss the cross-claim for the reason that it fails to state facts which would entitle the United States of America to a judgment. It also filed a motion for a summary judgment granting it all of the relief orginally prayed for as against the United States of America. The United States of America has countered with a motion for summary judgment in its favor.

There is apparently no dispute as to any material fact. The issues presented are purely legal.

## Motion to Vacate

■ The motion to vacate will not be passed on by this court until such time as the motion is served on those persons who received the money under the August 28, 1952 order. The creditors, paid the amounts admittedly due them, are necessary parties, and in their absence no motion can be granted ordering them to restore.

## The Issues

■ There are two questions presented here, the first of which is:

Is the surety liable under the terms of its bond to the government for sums withheld by the contractor from the wages of his employees for the payment of taxes?

The answer to this question must be in the negative. The arguments made on this issue have been made by the government and decided against the government in a series of cases. It is well settled that the surety on an ordinary performance bond is not secondarily liable to pay taxes due the United States by the contractor who failed to pay them. This holding is made necessary by numerous decisions [1] from which this case (on this question) is not distinguishable in fact or in law.

■ The second and most disputed issue for the court's determination is:

Does the government's alleged lien on the money that the Grant Parish School Board deposited in court outrank the statutory Louisiana liens in favor of suppliers of material and labor?

We are here dealing with several statutory liens, some owned by the materialmen, etc., and some by the federal government. The federal liens, securing unpaid withholding and unemployment taxes and insurance contributions, were created by Sec. 3670 of the Internal Revenue Code.[2] Section 3672 of the Internal

1. U. S. Fidelity & Guaranty Company v. U. S., 10 Cir., 1952, 201 F.2d 118; General Casualty Company of America v. U. S., 5 Cir., 1953, 205 F.2d 753; Westover v. Simpson Construction Company, 9 Cir., 209 F.2d 908.

2. "Sec. 3670. Property subject to lien.
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any inter-est, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. Sec. 3670, 26 U.S. C.(1946 Ed.) Sec. 3670, 26 U.S.C.A. § 3670.

Revenue Code, 26 U.S.C.A. § 3672, reads in pertinent part as follows:

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until, notice thereof has been filed by the collector".

Were the liens filed under the Louisiana Statute entitled to the status of a judgment creditor or a mortgagee within the meaning of Sec. 3672? If they are found to be so entitled and if they gained this status prior to the filing of notice, then and in that case the liens filed under Louisiana Law are entitled to priority. The United States relies heavily on two recent decisions of the Supreme Court of the United States: (a) U. S. v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, and (b) U. S. v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 705, 97 L.Ed. 1071. The Gilbert case is not controlling. There, the court was dealing with an insolvent taxpayer. The court said in that case:

"Where the lien of the Town and that of the Federal Government are both general, and the taxpayer is insolvent, § 3466 clearly awards priority to the United States." [3]

Plaintiff's counsel relies on the well settled jurisprudence of Louisiana to the effect that these liens and privileges, when recognized by judgment, relate back to the date of the filing. He also cites the case of Board of Supervisors of Louisiana State University v. Hart, 210 La. 78, 26 So.2d 361, 174 A.L.R. 1366 wherein the Supreme Court of Louisiana decided that an attachment lien was superior to an income tax lien of the United States.

■ The state is free to give its own interpretation to the nature and effect of its statutes for the purpose of its own administration, but the meaning of a federal statute is a question for this court to decide, U. S. v. Security Trust & Savings Bank, supra; U. S. v. Gilbert Associates, supra; U. S. v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, decided Feb. 1, 1954. In the Security Trust case, four suits over a parcel of land in California were involved. The state court awarded a judgment creditor priority over liens of the United States for taxes. The tax liens were filed after the attachment of a seizing creditor, but prior to the time the attaching creditor's claim was reduced to judgment. The California court held that the judgment related back or became effective as of the date of attachment. The State District Court of Appeals, Winther v. Morrison, 93 Cal.App.2d 608, 209 P.2d 657 affirmed this decision. The State Supreme Court of California declined to hear the case and the Supreme Court of the United States granted certiorari 339 U.S. 947, 70 S.Ct. 801, 94 L.Ed. 1361. The Supreme Court examined the law of California to find if such a lien under California law was and is, of itself, a judgment within the meaning of Section 3672 of Title 26, U.S.C. The Supreme Court of the United States found that it was not a judgment or a mortgage within the meaning of Section 3672. Mr. Justice Jackson, in his concurring opinion, said [340 U.S. 47, 71 S.Ct. 114]:

"While we should accept the law of California as its court has declared it, the federal question remains whether it is in conflict with 26 U.S.C. §§ 3670–3672 * * *. The history of this tax lien statute indicates that only a judgment creditor in the conventional sense is protected.

* * * *

"My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute and no others."

---

**3.** R.S. § 3466, 31 U.S.C.A. § 191. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; * * *."

█ It has been suggested that Congress did not intend, by giving priority over federal tax liens, to supersede state laws making certain interests superior to mortgages and judgments. This argument would be applicable, if accepted, to Louisiana. (It is conceded that the statutory state liens here involved are in certain instances superior to mortgages and judgments under state law). The Supreme Court of Error in Connecticut agreed with this argument in the New Britain case.[4] The United States Supreme Court did not agree when it heard the case on certiorari. We quote from that decision:

> "The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgages and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of § 3672 to show that Congress intended antecedent *federal tax liens to rank behind any but the specific categories of interests set out therein,* and the legislative history lends support to this impression." (Emphasis supplied.) 74 S. Ct. 371, 372.

Our opinion is that the Louisiana liens are not judgments or mortgages within the meaning of Sec. 3672 and are therefore not entitled *on that basis* to any priority over the federal tax lien. This holding is in conformity with the majority view in the three recent decisions of the United States Supreme Court (Security Trust, Gilbert Associates and New Britain, all cited herein).

Our holding on this point does not dispose of our problem. We have only found that all three of the recent decisions of the United States Supreme

Court, cited hereinabove, do hold that liens are not judgments within Sec. 3672, and thus are not entitled to priority on that basis over federal tax liens. The next. problem that we are faced with is, who is entitled to priority? The government's counsel is not asserting a claim under Sec. 3466, but squarely pegs the issue on Sec. 3672. Here, Congress has failed to expressly provide for federal priority.

█ In the Security Trust case, priority was given to the government lien even though recorded subsequent to the date of the attachment lien. In that case the court seemed to assume that Sec. 3672 and Sec. 3466 were entitled to the same interpretation in regard to priority. The Supreme Court, in the New Britain case, distinguished the two cases by saying that the Security Trust case involved an "inchoate" lien. They defined an "inchoate" lien as one that "may become certain as to the amount, identity of the lienor, or the property subject thereto only at some time subsequent to the date the federal liens attach". In the Security Trust case the Supreme Court defines an "inchoate" lien as one where "numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded." The Louisiana lien seems to fit the definition of an inchoate lien in the Security Trust case.[5] But, the New Britain case definition also fits and is appropriate. There, city tax and water rent liens were held to have attached and became "choate" upon filing. The Louisiana liens here were "certain as to amount, identity of the lienor, or the property subject thereto", and under the definition of the New Britain case were "choate." In the Security Trust case it was held the attachment was really not a lien at all but merely a right to perfect a lien. The Louisiana

---

4. Brown v. General Laundry Service, 139 Conn. 363, 94 A.2d 10.
5. If such liens are not paid or reduced to judgment within a certain period of time they are automatically lost. Then, too, there is always the question of proof.

lien is a perfect lien with a right to reduce to a perfect judgment. Because they are not judgments they gain no special standing by Section 3672—but because they are choate liens they would be entitled to priority if recorded prior to the federal tax liens. The record indictates that most of these state liens are therefore entitled to priority on the old rule (again set forth in the New Britain case), " 'the first in time is the first in right.' "

But, there is another feature in this case that, in our opinion, is totally decisive. In the Supreme Court decisions herein cited and relied on by the government, we find one constant factor. *In each of those cases, the liens (federal and others) attached to property belonging to the defendant debtor, property that was his all the time. Such is not the case here.* The government's debtor here is the contractor, who did not get the money.

 It is not necessary to rely on the so-called "equitable doctrine of relation back." U. S. Fidelity & Guaranty Co. v. U. S., 10 Cir., 1952, 201 F.2d 118, 121. It suffices to say that the rights of the Internal Revenue Collector can rise no higher than those of its debtor whose right to property is sought to be levied upon. Alexandria Insulation Company forfeited its rights to the fund prior to the filing of the tax lien. It had no right to the fund. Therefore, the government does not. New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473.

We have read numerous decisions involving contractors' bonds and attempts of the United States to recover taxes out of the balance in the hands of the *owner.* (Note: *not the debtor,* as in Supreme Court cases cited by the gov-

ernment). In each of these cases, the claim of the United States was denied.[6] Thus, it must be here.

An order in conformity with this opinion will be signed upon presentation.

---

6. *District Court cases:*
 (1) In re Caswell Construction Co., Inc., D.C., 13 F.2d 667;
 (2) New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473;
 (3) American Fidelity Co. v. Delaney, D.C., 114 F.Supp. 702;

*Circuit Court cases:*
 (4) Glenn v. American Surety Co., 6 Cir., 160 F.2d 977;
 (5) U. S. Fidelity & Guaranty Co. v. U. S., 10 Cir., 201 F.2d 118;
 (6) General Casualty Co. of America v. U. S., 5 Cir., 205 F.2d 753.