No. 17,917.

UNITED STATES OF AMERICA *v.* W. H. VORREITER.

(307 P. [2d] 475)

Decided February 18, 1957.   Rehearing denied March 11, 1957.

Mr. CHARLES K. RICE, Assistant United States Attorney General, Mr. LEE A. JACKSON, Mr. HARRY BAUM, Mr.

SANDER W. SHAPIRO, Counsel Department of Justice, Mr. DONALD E. KELLEY, United States Attorney, for plaintiff in error.

Mr. HERMAN W. SEAMAN, Mr. CONRAD L. BALL, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THIS case involves the relative priority between mechanics' liens and the liens of the United States for unpaid income taxes. The trial court adjudged priority in favor of the mechanics' liens over the liens of the United States. We are asked to reverse this judgment on the ground that the United States has been denied priority.

From the undisputed facts it appears that Eldridge S. Price, a resident of Ballinger, Texas, owned improved property on the north fork of the Big Thompson River in Larimer County, Colorado. While such owner, the United States assessed income taxes against Price and his wife, totaling at the time of trial $310,794.36. On July 23, 1953, the Collector of Internal Revenue at Austin, Texas, received income tax assessment lists against the Prices in the amount of $94,901.93.

Between August 6, 1953, and August 14, 1953, the plaintiff and six other workmen and material men entered into individual contracts under the terms of which they were to perform services for, or furnish materials to, Price in connection with contemplated improvements of his property in Colorado. Pursuant to their contracts, performance was commenced by these several workmen and material men on various dates starting with August 6, 1953, and ending on August 20, 1953. The completion date was sometime in October 1953.

Lien statements for labor performed and materials furnished were filed by the several claimants in the of-

fice of the County Clerk and Recorder of Larimer County between October 30, 1953, and December 5, 1953. In all, they amounted to $4,455.85.

Other income tax assessment lists were received by the same Collector on August 27, 1953, December 3 and 31, 1953. Notices of liens for these taxes were not recorded in the office of the County Clerk and Recorder of Larimer County until December 16, 1953, and December 31, 1953.

On February 18, 1954, Vorreiter, for himself and as assignee of the duly assigned claims of the other lien claimants, brought this action to foreclose his several lien claims. In the trial no question was raised as to the validity of mechanics' liens or the government tax liens; the only issue requiring resolution by the trial court was that of priority.

The assessment lists set forth the names of Eldridge S. and Edith Wynn Price, their residence as Box 387, Ballinger, Texas, classified the debt as unpaid income taxes, giving the dates thereof, and included some remarks not pertinent to the question here to be resolved, but contained no description of the property affected.

The government contends that its liens are prior and superior for two reasons:

1. "Vorreiter's liens, being inchoate, imperfected liens, are inferior to the tax liens of the United States which arose and were recorded before Vorreiter's liens were reduced to judgment."

2. "The tax lien of the United States which arose under Section 3671 on July 23, 1953, is first in time and therefore superior to Vorreiter's liens arising under contracts the earliest of which was executed August 6, 1953, or for work performed, commencing at the earliest on August 6, 1953."

Necessary to a determination of the questions raised by the government are certain sections of the Internal Revenue Code of 1939 as amended and a portion of the mechanics' lien statute of this state. The following pro-

visions of the Internal Revenue Code are pertinent to our inquiry:

"SEC. 3670. PROPERTY SUBJECT TO LIEN.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"SEC. 3671. PERIOD OF LIEN.

"Unless another date is specifically fixed by law, *the lien shall arise at the time the assessment list was received by the collector* and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." (Emphasis supplied.)

"SEC. 3672. VALIDITY AGAINST MORTGAGEES, PLEDGEES, PURCHASERS, AND JUDGMENT CREDITORS.

"(a) *Invalidity of Lien Without Notice.* — Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector —

"(1) *Under State or Territorial Laws.* — In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, * * * "

C.R.S. 1953, 86-3-6, in part provides:

"All liens, established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or * * * as of the time of the commencement of the work upon the structure or improvement, and shall have priority over any and every lien or encumbrance subsequently intervening, *or which may have been created prior thereto, but which was not then recorded, and of which, the lienor, under this article did not have actual notice.* Nothing herein contained, however, shall

be construed as impairing any valid encumbrance upon any such land, duly made and recorded prior to the signing of such contract, or the commencement of work upon such improvements or structure. * * * " (Emphasis supplied.)

It is the contention of the United States that the mechanics' liens in this case were inchoate and that we must therefore invert the order of priority decreed by the lower court. According to the federal decisions relied upon involving questions of priority as between liens of various kinds and federal tax liens, it is necessary that the first-mentioned liens be certain and perfected before the federal lien attaches ere they can be said to be superior to the federal liens.

The contention of the federal government, if applied to liens in Colorado, would upset long established rules of property in this state. "It is also well settled that where a course of decisions, whether founded upon statutes or not, have become rules of property as laid down by the highest courts of the State, by which is meant those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto, they are to be treated as laws of that State by the federal courts." *Bucher v. Cheshire Rd. Co.*, 125 U.S. 555, 8 S.Ct. 974, 31 L.Ed. 795.

A hypothetical situation, set forth in Vorreiter's brief, shows how the above quoted portions of the Internal Revenue Code, and the law construing them, overturn settled rules of property of this state. Richard Roe of Miami, Florida, owns a summer residence at Evergreen, Colorado. He has not paid his federal income taxes. The Collector of Internal Revenue at Miami receives an assessment list on June 1, 1955. During July, Roe undertakes extensive improvements on his summer residence amounting to $7500.00. These improvements are completed on October 1st and on November 15th lien statements are filed in the office of the Clerk and Recorder. In August, Roe obtains a $500.00 loan from his friend,

John Doe, and gives John Doe a deed of trust on the summer residence, which deed of trust is properly recorded. On October 15th a judgment creditor of Roe's levies an execution on the summer residence. On December 10th the government files its notice of tax lien in the sum of $7500.00 in the office of the Clerk and Recorder. There are, therefore, the following claims of liens listed in the order in which they arose:

1. Claim of the United States for income taxes;
2. Claim of mechanics' lienholders;
3. Lien of the deed of trust;
4. Lien of the judgment creditor.

How is the priority of these liens to be fixed in the event the government's lien is prior to the mechanics' liens? The mortgagee and the judgment creditor are within the exception mentioned under Section 3672, supra, and, therefore, have priority over the government's lien; yet, under state law, the mechanics' liens are prior to the liens of the mortgagee and the judgment creditor because the work was commenced before either the mortgage lien or the judgment lien attached. According to the government's contention, the claims of the mechanics, not being expressly mentioned in Section 3672, supra, are inferior to the tax lien. But, by virtue of the same section, the government cannot have priority against the mortgagee and judgment creditor.

May the structure of property law of the state be thus pulled down? The Supreme Court of the United States "has not hesitated when there has been a conflict of decision between it and the state courts, affecting a rule of property within the state, to overrule its own decisions and to follow the state decisions once it has become evident that they have established a 'rule of property' as the settled law of the state . . ." *Edward Hines Yellow Pine Trustees v. Martin*, 268 U.S. 458, 45 S.Ct. 543, 69 L.Ed. 1050. See *Warburton v. White*, 176 U.S. 484, 20 S.Ct. 404, 44 L.Ed. 555.

Even though doubt is cast upon the strength of

the position taken by the Attorney General of the United States regarding priority of tax liens over statutory liens by what we have said, with due respect to the arguments advanced to sustain him we believe there are three cogent reasons why the lower court correctly adjudged this case. First, the government does not require a third party to pay the taxes of a taxpayer. And it should make no difference that the payment is in the form of property — the form of property in this case being the enhancement of the value of Price's property by labor performed and materials supplied in the improvement thereof. *United States v. Bank of Shelby,* 68 F. (2d) 538; *United States v. Bank of United States,* 5 F.S. 942; *Jacobson v. Hahn,* 14 F.S. 339.

The Jacobson case involved Liberty bonds deposited in lieu of bail by the plaintiff with the Clerk of the Federal District Court in a criminal action. Notice of lien and levy for failure to pay income taxes was filed with said clerk. Upon acquittal plaintiff sued the clerk and the Collector of Internal Revenue to recover the bonds. It was proved that part of the money used to purchase the bonds belonged to the plaintiff and part to the defendant in the criminal action. The court held that the Collector had a lien on that portion of the bonds for which defendant supplied the money, and that plaintiff could recover the balance of the bonds.

Second, the government is amenable to the universally recognized doctrine of unjust enrichment. This equitable doctrine is bottomed on the principle of fairness and justice. It has had application in tax cases involving questions of priority. *United States v. Albert Holman Lumber Co.,* 206 F. (2d) 685; *In re Taylorcraft Aviation Corp.,* 168 F. (2d) 808. "The essential principle upon which the mechanic's lien rests is that of unjust enrichment. It is uncontradicted in this record that the giving of a priority to the United States over the mechanic's lien also gives the United States the enhancement of the value of the property which resulted

from the work performed and the material supplied by the appellee." Per Justice Allen, *In re Taylorcraft Aviation Corp., supra.*

Third, the lien attaches to so much, and no more, of the property interest which the taxpayer had at the time the tax lien came into being. *United States v. Kaufman,* 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685; *United States v. Pacific R. Co.* (1880; C.C.), 1 McCrary, 1, 1 Fed. 97; *Jones v. Kemp,* 144 F. (2d) 478; *United States v. Winnett,* 165 F. (2d) 149; *Louisiana State University v. Hart,* 210 La. 78, 26 So. (2d) 361, 174 A.L.R. 1366.

Any of these three theories is applicable to the instant case. It must be remembered that when the federal lien attached, the improvements giving rise to the plaintiff's liens were not in existence. To permit the federal government to have the benefit of the value of these improvements would be to present it with a windfall. If the government were to succeed, it would in effect be collecting the taxes owing by Price, by appropriating the labor and materials of the lien claimants integrated into his property in Colorado; would be unjustly enriched at the expense of third parties, these lien claimants, and would be receiving more than the property to which the lien attached. We believe and so hold that upon the record before us the government's position cannot be sustained.

The judgment is therefore affirmed.

MR. CHIEF JUSTICE MOORE specially concurring.

MR. JUSTICE HOLLAND not participating.

MR. CHIEF JUSTICE MOORE specially concurring:

It is most interesting to observe that the cases chiefly relied on by counsel for the United States are two decisions of the Supreme Court of the United States wherein it appears that the lower courts were in accord with the views expressed by the opinion of this court in the in-

stant case; however the United States Supreme Court reversed the lower court without written opinion.

I am at a loss to understand how justice could possibly be served by appropriating the labor and materials of workmen to the payment of the tax delinquency of another under the circumstances disclosed by the record in the case at bar. About the only rule we can think of that could support such a result is the one referred to by Mr. Justice Burke in *People v. Kilpatrick,* 79 Colo. 303, 245 Pac. 719, as follows:

"The good old rule, the simple plan,
That they should take who have the power
And they should keep who can."

The opinion in that case also contained the following language which we think is applicable here:

"The construction given the act in question by the trial court [Supreme Court of the United States] is fraught with such momentous and disastrous results that we would need go no further than invoke against it the fundamental rule that absurd interpretations will not be given statutes when reasonable ones may be resorted to. A reasonable one here lies at hand."

The federal statute provides that the lien claimed by the government "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed * * * " as provided by state law. Justice clearly requires an interpretation that the mechanics' lien holders in this case, who had no notice actual or constructive, are included within these exemptions. If this cannot be done the statute does violence to the constitution in that it deprives the workmen of the fruits of their labor without due process of law.