UNITED STATES of America, Plaintiff,

v.

Joseph PROFACI, Ninfa Profaci, Mamma Mia Importing Co., Inc., a corporation, Mamiapro Realty Corp., Smith-Weihman Company, Inc., County of Kings, New York, Santuzza Oil Co., Inc., Sunshine Edible Oil Co., Inc., Lafayette National Bank, National City Bank of New York, South Brooklyn Savings & Loan Association, Bensonhurst National Bank, Salvatore Profaci, New York State Insurance Fund and the People of the State of New York, Defendants.

Civ. A. No. 13290.

United States District Court
E. D. New York.

Nov. 7, 1955.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., for plaintiff, Richard C. Packard, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Charles Fredericks, New York City, for defendant, Smith-Weihman Co., Inc.

ABRUZZO, District Judge.

Large tax liens were filed against the defendants, Joseph Profaci, Ninfa Profaci, Mamma Mia Importing Company, Inc., and Mamiapro Realty Corp. by the plaintiff, United States of America. As a result of these tax liens a civil suit for the collection of taxes was started by the United States against the defendants above named and the defendants, Smith-Weihman Company, Inc., County of Kings, New York, Santuzza Oil Company, Inc., and others.

Smith-Weihman Company, Inc., one of the defendants in this action which will hereinafter be referred to as Smith-Weihman, makes this motion and seeks an order directing the Lafayette National Bank of Brooklyn to pay to it out of funds deposited in the bank in the name of the defendant, Mamma Mia Importing Company, Inc., hereinafter referred to as Mamma Mia, the sum of $2,971.75 with interest from December 6, 1952. Smith-Weihman had been engaged in various trust receipt transactions with Mamma Mia prior to the commencement of this action. It held in various warehouses imported edible oil for the account of Mamma Mia in accordance with written contracts between the parties.

On October 31, 1952, Mamma Mia requested the release of 100 cases of Italian olive oil valued at $4,740.07. On that date an order was drawn on a Pennsylvania warehouse, where the oil was stored, and on the same date a trust receipt was executed by Mamma Mia to Smith-Weihman. Mamma Mia became possessed of this oil. On November 6, 1952, Smith-Weihman received a payment of $494.70 and on November 25, 1952, a further payment of $1,273.62. On December 5, 1952, Mamma Mia issued its check in the amount of $2,971.75 drawn on the Lafayette National Bank of Brooklyn in favor of Smith-Weihman for the balance due on that transaction. On December 6, 1952, this check was deposited by Smith-Weihman for collection, and on or about December 10, 1952, it was returned, marked "Account Attached." On December 5, 1952, the same day that the check was issued, federal income tax liens totaling $135,397.37 relating to income tax returns for the years 1944 to 1949 were filed in the Internal Revenue Department of this District against Mamma Mia by the District Director of Internal Revenue. Notice of this lien was filed with the Lafayette National Bank on that date which resulted in the nonpayment of the check to Smith-Weihman.

In the action begun by the plaintiff to foreclose the tax liens, Smith-Weihman was named as a defendant due to the fact that it held a real estate mortgage against premises owned by another defendant at which Mamma Mia carried

on its business, and also due to the fact that it held a chattel mortgage executed by Mamma Mia on chattels in that building.

On February 19, 1953, a temporary receiver was appointed over all the assets of Mamma Mia and on April 22, 1953, a permanent receiver was appointed.

The issue raised by this motion is whether or not Smith-Weihman is entitled to a preferential payment of the proceeds of the check of December 5th. The plaintiff contends it is entitled to a priority because of its assessment of taxes on the same date. Smith-Weihman bases its claim of preference on Section 52 of the Personal Property Law, McK.Consol.Laws, c. 41, and because the transaction was such that title to the olive oil delivered to Mamma Mia remained in Smith-Weihman until full payment was made. Section 52 of the Personal Property Law provides as follows:

"§ 52. *What constitutes trust receipt transaction and trust receipt*

"1. A trust receipt transaction within the meaning of this article is any transaction to which an entrust-er and a trustee are parties, for one of the purposes set forth in subdivision three of this section, whereby

"(a) The entruster or any third person delivers to the trustee goods, documents or instruments in which the entruster (i) prior to transaction has, or for new value (ii) by the transaction acquires or (iii) as the result thereof is to acquire promptly, a security interest; or

* * * * * *

"3. A transaction shall not be deemed a trust receipt transaction unless the possession of the trustee thereunder is for a purpose substantially equivalent to any one of the following:

"(a) In the case of goods, documents or instruments, for the purpose of selling or exchanging them, or of procuring their sale or exchange; or * * *."

The facts before me as to the relevancy of this section are contained in (1) the invoice and statement regarding the purchase of 100 cases of oil sent to Mamma Mia which reads as follows:

Statement

New York 4, Oct. 31, 1952
New York

Mamma Mia Importing Co., Inc.
     1414–65th St., Brooklyn, 19, N. Y.
     Smith-Weihman Co., Inc.
         15 Moore Street
         Mdse. as per bill rendered.
Re: Our Invoice No. 6725 Of 12/6/50 Covering 1000 Cases Italian Riviera Olive Oil Packed In Tins Lithographed With The Mamma Mia Brand.

    900 Cases @ $40.00 Per Case
     60   "   "  42.00  "    "
     40   "   "  44.00  "    "
    Plus Charges—$42,453.65 Equivalent To
    $42,4537      Per Case

    To Withdrawal Of 100 Cases Of The Above

|  |  |
|---|---|
| * | $4245.37 |
| Duty | 490.20 |
| Withdrawal Entry & Services | 4.50 |
|  | $4740.07 |

*Lot 5981

(2) A trust receipt delivered by Mamma Mia immediately after the delivery of the oil; and

(3) The check dated December 5, 1952, in the sum of $2,971.75.

In addition thereto, we have the two partial payment checks.

These documents indicate an outright sale passing title to Mamma Mia. There is no proof that the trust receipt was anything more than a promise to pay. Smith-Weihman's preference is only effectual if it were able to follow the 100 cases of oil or the proceeds of the sale. There is nothing before me to evidence that these 100 cases were ever sold. There is a suggestion they were. There is no proof before me that there was any deposit of money in the Mamma Mia account specifically allocated to these particular 100 cases of oil. As a matter of fact, the proof is undisputed that when the check of December 5th was drawn there was more money in the bank than the amount of the check, so at best there was a mixture of funds. This precluded Smith-Weihman from identifying the funds. They are now in a position where they can neither identify the sale of this oil nor follow and identify the funds received from the sale of this oil. Under these circumstances the trust receipt cannot be recognized as a preference.

The plaintiff's claim of priority is predicated on Section 6323(c) (1) of the Internal Revenue Code of 1954, 26 U.S.C. A. § 6323(c) (formerly 26 U.S.C.A. § 3672(a)). That section provides that a lien for federal taxes shall not be valid as against any mortgagee, pledgee, or purchaser, if at the time of the mortgage, pledge or purchase, such mortgagee, pledgee or purchaser is without notice or knowledge of the existence of the lien. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

Recently the Circuit Court of Appeals had occasion to pass upon that particular section, 26 U.S.C.A. § 3672(a). United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232. It held that the Government's lien gives it a fully perfected claim superior to all except mortgagees, pledgees, purchasers, or judgment creditors of the taxpayer.

Smith-Weihman does not fall within any one of these excepted categories. Its motion must, therefore, be denied.