CENTRAL MERCEDITA, INC., Plaintiff and Appellee, *v.* FRANCISCO PICART, Defendant; UNITED STATES OF AMERICA, PEDRO J. RULLÁN and ROYAL INDEMNITY COMPANY, Interveners, the latter Appellant.

No. 12135. Decided April 25, 1962.

*Germán Rieckehoff* and *Ramón Humberto Vargas* for intervener and appellant. *Rubén Rodríguez Antongiorgi, Federal District Attorney,* and *Francisco A. Gil, Jr., Federal Assistant District Attorney,* for the United States of America.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On June 3, 1954, the corporation Central Mercedita, Inc., entered into a contract with contractor Francisco Picart whereby the latter bound himself to construct for the former a reinforced-concrete house in the ward of Sabanetas, place of Mercedita of Ponce, for the total price of $17,818.01. It was agreed that the owner would tender weekly partial payments to the contractor in accordance with the percentage of work terminated in each period of partial payment, but it was stipulated that upon tendering each partial payment

the owner would withhold 10 per cent of the value of the work performed to be subsequently liquidated at the termination of the work. It was agreed that in the event the contractor should fail to terminate the work within the period of 120 working days agreed upon, the contractor would pay to the owner, by way of indemnity, the sum of $25 for each day of delay which the owner would withhold from the liquidation of the work.[1] In accordance with the terms of the said contract, Picart gave a bond, which was furnished on June 7, 1954 by the Royal Indemnity Co., in favor of Central Mercedita, Inc., for the total amount of $10,000, covering the following liabilities: $3,000 performance bond and $7,000 labor and material payment bond. Picart in turn subscribed an indemnity agreement in favor of Royal Indemnity Co. in which it was agreed as follows:

"In further consideration of the execution of the said bond, the undersigned does hereby agree, as of this date, that the said Royal Indemnity Company shall, as surety on said bond, be subrogated to all rights, privileges and properties of the undersigned, as principal and otherwise in said contract, and does hereby assign, transfer and convey to said Company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract, or on account of extra work and materials supplied in connection therewith, hereby agreeing that all such moneys, and the proceeds of such payments and properties, shall be the sole property of the said Royal Indemnity Company, and to be by it credited upon any loan, cost, damage, charge and expense sustained, or incurred by it as above under its bond of suretyship."

Picart terminated the construction of the house in question at the end of December 1954. After liquidating the sums paid to Picart pursuant to the terms of the construc-

---

[1] In another clause Central Mercedita, Inc. bound itself to liquidate this 10 per cent to the contractor within 60 days counted as of the delivery and acceptance of the work by the contractor to the owner.

tion contract, there was a final balance to the latter's credit for the sum of $2,309.48.

At the termination of the work Picart owed the sum of $1,761 to the corporation J. R. Salicrup, Inc., and $830.50 to Pedro J. Rullán for materials furnished for the execution of the work.

On October 7, 1954, the United States Collector of Internal Revenue had notified Central Mercedita, Inc. of an attachment of the rights and actions of Picart arising from the said construction contract. The attachment was for the sum of $2,846.85 which Picart owed the United States of America for Federal Social Security contributions in other different works performed by Picart.

In view of this notice of attachment and that J. Salicrup, Inc. as well as Pedro J. Rullán demanded from Central Mercedita, Inc. the payment of their credits from the balance withheld to Picart, that corporation deposited the said balance in the Ponce Part of the Superior Court in order that the parties in interest would litigate their conflicting claims.

All the parties in interest appeared, the United States of America by means of a petition for intervention, and each alleged that it had a prior right to the amount on deposit. The Royal Indemnity Co. based its right to the sum deposited on the subrogation and assignment-of-rights clause contained in the indemnity agreement subscribed in its favor by Picart, which we have transcribed above. It alleged specifically: "That the sum deposited in this court belongs to the appearing party Royal Indemnity Co. to answer for any claim for materials or labor which may arise in the execution of the contract in question, and for the payment of the expenses and attorney's fees which may be incurred in the defense of this litigation, as well as any other expense incurred by Royal Indemnity Co." [2]

---

[2] Several months after the action of interpleader was brought, Royal Indemnity Co. paid to the corporation J. R. Salicrup, Inc. the sum of $1,761 which Picart owed to the latter, and also bound itself to pay Pedro J. Rullán his credit.

After holding a pretrial conference, the case was submitted to the court to decide which credit had priority over the sum deposited. Subsequently the court rendered judgment declaring that the United States of America has priority to collect the sum of $2,309.48 which had been deposited with the clerk of the court, and ordered the Royal Indemnity Co. to pay the costs but not the attorney's fees.

 Feeling aggrieved by said judgment, Royal Indemnity Co. appealed to this Court.

The federal tax statutes create a lien in favor of the Federal Government upon all property and right to property of the taxpayer who neglects to pay the taxes assessed. Sections 3670, 3671, and 3672 of the United States Internal Revenue Code of 1939,[3] provide:

"Section 3670: If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"Section 3671: Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.

"Section 3672: (a) *Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector."

 It will be noted that this tax lien in favor of the United States arises automatically at the time the assessment list is received by the collector. However, the lien becomes effective when the taxpayer neglects to pay the taxes after notice of the assessment and demand to pay.

---

[3] These sections were re-enacted in the Internal Revenue Code of 1954 under numbers 6321, 6322 and 6323.

The evidence in this case shows that the tax liens in favor of the United States arose prior to the date Picart and Central Mercedita, Inc. executed the construction contract in June 1954, with the exception of the sum of $77.04. (The assessment list for this sum was received by the United States Collector of Internal Revenue for Puerto Rico on August 4, 1954.)

As a general rule, this class of tax liens are known only to the debtor-taxpayer. It arises from an internal process of assessment by the Internal Revenue Service which is not entered of record nor made public. In this respect, it has been currently characterized as a secret lien, unrecorded. However, under the federal act which governs its effectiveness it has been characterized as a choate lien. *United States* v. *New Britain*, 347 U.S. 81, 98 L. Ed. 520. The law is silent on the question that it is property or property right of the taxpayer, but the United States Supreme Court has held that that question is governed by the local and not by the federal act. *United States* v. *Bess*, 357 U.S. 51, 2 L. Ed.2d 1135.[4] The law does not establish either an order of priority as between that tax lien and the other liens created by the local statutes. However, it has been held that the priority of the tax lien in favor of the United States has always been a federal question to be determined finally by the federal courts. *United States* v. *Acri*, 348 U.S. 211, 99 L. Ed. 264. In the *New Britain* case, *supra*, it was said that the priority rule read "the first in time is the first in right," but as we shall presently see the application of that maxim is conditioned on the fact that, when the issue is the priority as between a federal tax lien and another lien created by a local statute, the latter must be choate and specific

---

[4] In this case it was said: "Since § 3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, *Fidelity & Deposit Co.* v. *New York City Housing Authority*, 241 F.2d 142, 144, we must look first to Mr. Bess' right in the policies as defined by state law."

before the tax assessment is made, which is the moment when the federal tax lien arises. Naturally, this rule contains the four exceptions prescribed by the federal statute in its § 3672, against whom it declares the invalidity of the tax lien without notice.[5]

We must first determine whether the balance of 10 percent withheld by Central Mercedita, Inc. constitutes "property" of contractor Picart, since the federal tax lien may affect only the property or rights thereto belonging to the debtor-taxpayer. Section 3671, *ante*.

■ Picart terminated the construction of the work within the period agreed upon and it was delivered to and received by the owner. Consequently, the latter was bound to liquidate and to turn over to Picart the balance of the 10 per cent withheld by the former. In that sense the said balance constituted property or rights thereto corresponding to Picart and to which the tax lien in favor of the United States is attached, even though Picart acquired such property subsequent to the date the tax lien arose. *Glass City Bank* v. *United States*, 326 U.S. 265. Therefore, it remains to decide whether the United States of America or Royal Indemnity Co. should prevail in the order of priority.

■ We have seen that this insurance company claims the balance of the 10 per cent in subrogation of the rights of contractor Picart and as assignee of such property, and likewise that upon termination of the work Picart owed certain sums to two business firms for materials furnished. The Royal Indemnity Co. paid its debt to one of those firms and bound itself to pay his debt to the other. All of this, how-

---

[5] The absence of specific provisions in the federal statute such as the definition of property, order of priority of the tax lien, etc., has given rise to a great number of problems confronting the courts thereby creating no slight confusion in their decisions. See ANDERSON, *Federal Tax Liens— Their Nature on Priority*, 41 Cal. L. Rev. 241; KENNEDY, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate Lien Problems*, 13 Tax L. Rev. 459; WOLSON, *Federal Tax Liens— A Study on Confusion and Confiscation*, 43 Marq. L. Rev. 180.

ever, occurred after the federal lien attached on all of Picart's property and after notice of the attachment of all rights and actions of Picart arising from the construction contract had been served on Central Mercedita, Inc. by the Collector of Internal Revenue.

 The insurance companies which execute with their principals an indemnity agreement such as that involved in this case have no opportunity to prevail over an adverse claim of the United States for taxes assessed and unpaid. This is so in view of the doctrine adopted by the federal courts with respect to the perfection and effectiveness of the liens created by the state laws. For a private lien to prevail, in order of priority, over a federal tax lien, the private lien, independently of its nature under the local statute, should in the federal concept be "choate," and in applying the rule "the first in time is the first in right" to a private lien as against the federal tax lien, the priority of the private lien relates to the time it has become choate. Of course, we have already said that the determination of the time when a private lien which competes in priority with the federal tax lien becomes effective and choate is a federal and not a state question. *United States* v. *Acri, supra*. In order that the private lien be considered choate, it must meet three requirements: *First*, that the *property* subject to the lien be established; *second*, the identity of the holder of the lien, which must be specific and definite; and *third*, the private lien must be for an amount certain, which has been definitively fixed. *United States* v. *New Britain*, 347 U.S. 81.[6] According to this doctrine, the private lien, even though under the state law it has priority over all other liens, is unsuccessful as against the federal tax lien, even though the latter has arisen subsequent to the private lien and is not the first in time. *United States* v. *White Bear Brewing Co.*, 350

---

[6] The term *choate* has been used by the United States Supreme Court since 1950 in the case of *United States* v. *Security Trust & Savings Bank*, 340 U.S. 47.

U.S. 1010. The private lien arises with all its legal effects at the time it becomes choate and not on any prior date, the determination whether the private lien meets the requirements of *"the choate lien* doctrine" being a federal question. *United States* v. *Scovil*, 348 U.S. 218; *United States* v. *Security Trust & Savings Bank*, 340 U.S. 47.

In the instant case both the United States and the Royal Indemnity Co. make claim through the contractor. Therefore, the question is one of priority between both credits.

 Under the *choateness* doctrine, the Royal Indemnity Co. can not prevail. The United States lien was recorded long before Picart terminated the work. The amount which Royal Indemnity Co. was bound to pay to the materialmen because of Picart's default was uncertain on the date the said lien was recorded. Therefore, the Royal's lien was considered inchoate and, consequently, without priority over the United States lien. *United States* v. *R. Ball Construction Company*, 355 U.S. 587.

 The situation of Royal Indemnity would not change if it would claim in substitution or subrogation of the rights of the materialmen because on the date the federal tax lien was assessed, the lien for materials furnished for the work was not defined nor perfected, but it was then an *"inchoate lien"* and it did not, therefore, have priority over the federal lien.

For the reasons stated, the judgment rendered by the superior court will be affirmed.