CENTRAL MERCEDITA, INC., demandante y apelada, *v.* FRANCISCO PICART, demandado; ESTADOS UNIDOS DE AMÉRICA, PEDRO J. RULLÁN Y ROYAL INDEMNITY COMPANY, interventores, apelante el último.

*Número:* 12135. *Resuelto:* 25 de abril de 1962.

*Germán Rieckehoff* y *Ramón Humberto Vargas,* abogados de la interventora y apelante; *Rubén Rodríguez Antongiorgi, Fiscal de los Estados Unidos* y *Francisco A. Gil, Jr., Asistente Fiscal de los Estados Unidos,* abogados de los Estados Unidos de América.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Rigau.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En 3 de junio de 1954, la corporación Central Mercedita, Inc., firmó un contrato con el contratista Francisco Picart, obligándose éste a construir para aquélla una casa de hormigón armado en el barrio Sabanetas, sitio Mercedita de Ponce, por un precio total de $17,818.01. Se convino que la dueña haría al contratista pagos parciales semanalmente de acuerdo con el por ciento terminado de la obra en cada período de pago parcial pero estipulándose que al efectuarse cada pago parcial la dueña retendría un diez por ciento del valor de la obra realizada para liquidarse subsiguientemente al finalizar la obra. Se convino que si el contratista dejare de terminar la obra dentro del término de 120 días laborables pactados, el contratista pagaría a la dueña por vía de indemnización la suma de $25.00 por cada día de mora transcurrido que la dueña retendría de la liquidación de la obra.[1] De conformidad con los términos de dicho contrato, Picart obtuvo una fianza, prestada en 7 de junio de 1954 por la Royal Indemnity Co. a favor de Central Mercedita, Inc. por un total de $10,000.00 cubriendo las siguientes responsabilidades: $3,000 para garantizar el cumplimiento específico del contrato de construcción *(Performance bond)* y $7,000 para garantizar el pago de las obligaciones contraídas por el contratista en relación con la compra de materiales y la contratación de la mano de obra *(Labor and Material Payment Bond)*. A su vez Picart suscribió un documento de indemnización *(indemnity agreement)* a favor de Royal Indemnity Co. y en el cual se convino lo siguiente:

"Como consideración adicional en la ejecución de dicha fianza, el suscribiente acuerda en esta fecha, que la referida Royal Indemnity Company, como aseguradora en dicha fianza, quedará subrogada en todos los derechos, privilegios y propieda-

---

[1] En otra cláusula Central Mercedita, Inc. se obligó a liquidar este diez por ciento al contratista dentro de los sesenta días a partir de la entrega y aceptación de la obra por el contratista a la dueña.

des del suscribiente como principal o en cualquier otra forma en dicho contrato, y por la presente asigna, transfiere y traspasa a la susodicha Compañía todos los pagos diferidos y por cientos retenidos, y todos y cada uno de los dineros y propiedades que puedan estar vencidos y sean pagaderos al tiempo de tal incumplimiento u omisión, o que en lo sucesivo puedan vencer y sean pagaderos al suscribiente por virtud de dicho contrato o a cuenta de trabajo extra y materiales suplidos en conexión con eso, acordando por la presente que todos dichos dineros y los productos de dichos pagos y propiedades, serán de la exclusiva propiedad de la Royal Indemnity Company, y a ser por ella acreditados a cualquier préstamo, costo, daño, cargo y gasto sufrido o incurrido por ella por lo arriba expresado bajo su contrato de fianza."

Picart terminó la construcción de la casa de referencia a fines de diciembre de 1954. Luego de realizada la liquidación de las sumas entregadas a Picart de acuerdo con los términos del contrato de construcción resultó un balance final a favor de éste por la suma de $2,309.48.

A la terminación de la obra Picart adeudaba la suma de $1,761.00 a la corporación J. R. Salicrup, Inc. y $830.50 a Pedro J. Rullán por concepto de materiales servidos por éstos para la ejecución de la obra.

En octubre 7 de 1954 el Colector de Rentas Internas de los Estados Unidos había notificado a Central Mercedita, Inc. un embargo de los derechos y acciones de Picart que surgían del susodicho contrato de construcción. El embargo era por la suma de $2,846.85 que Picart adeudaba a Estados Unidos de América por concepto de cuotas de Seguro Social Federal en otras obras distintas realizadas por Picart.

En vista de esta notificación de embargo y de que tanto J. Salicrup, Inc. y Pedro J. Rullán reclamaron de Central Mercedita, Inc. el pago de sus haberes del saldo retenido a Picart, dicha corporación consignó el referido saldo en la Sala de Ponce del Tribunal Superior para que los interesados litigaran sus reclamaciones opuestas.

Comparecieron todos los interesados, los Estados Unidos de América por medio de una demanda de intervención y cada uno alegó tener un crédito preferente sobre la suma consignada. La Royal Indemnity Co. basó su derecho a la suma consignada en la cláusula de subrogación y cesión de derechos contenida en el documento de indemnización *(indemnity agreement)* suscrito a su favor por Picart y la cual hemos copiado anteriormente. Específicamente alegó: "Que la suma consignada ante este Tribunal pertenece a la compareciente Royal Indemnity Co. para ésta hacer efectiva cualquier reclamación que surja por materiales o mano de obra en la ejecución del contrato de referencia, y para el pago de los gastos y honorarios que ocasione la defensa del presente litigio así como cualquier otro gasto en que incurra Royal Indemnity Co." (²)

Después de celebrarse una conferencia con antelación al juicio el caso quedó sometido al Tribunal para que resolviera cual de los créditos tenía preferencia sobre la suma consignada. Posteriormente el Tribunal dictó sentencia declarando que Estados Unidos tiene preferencia al cobro de la suma de $2,309.48 depositada en la secretaría del Tribunal y condenó a Royal Indemnity Co. al pago de las costas, sin incluir honorarios de abogado.

No estando conforme con dicha sentencia, Royal Indemnity Co. interpuso recurso de apelación para ante este Tribunal.

Los estatutos contributivos federales crean un gravamen a favor del gobierno federal sobre toda la propiedad o derecho de propiedad del contribuyente que omite pagar las contribuciones que le han sido impuestas. Las Secciones 3670, 3671 y 3672 del Código de Rentas Internas de Estados Unidos de 1939, (³) disponen:

(²) Varios meses después de iniciarse la acción de consignación, Royal Indemnity Co., pagó a la corporación J. R. Salicrup, Inc. la suma de $1,761.00 debida a ésta por Picart y además se comprometió a pagar a Pedro J. Rullán su acreencia.

(³) Estas secciones fueron reenactadas en el Código de Rentas Internas de 1954 con los números 6321, 6322 y 6323.

"Sección 3670: Si una persona obligada a pagar cualquier impuesto descuidare o rehusare pagarlo después de ser requerida a ello, la cantidad (incluyendo cualesquiera intereses, penalidad o cantidad adicionales, o aumentos en tal contribución, con más cualesquiera costas que se ocasionaren en adición a los mismos) constituirá un gravamen en favor de los E. U., sobre todos los bienes y derechos sobre los mismos, ya sean personales o reales, pertenecientes a dicha persona.

"Sección 3671: A menos que otra fecha sea fijada por Ley, el gravamen surgirá al tiempo en que la lista imponiendo la contribución sea recibida por el Colector, y continuará en vigor hasta que la obligación de pagar tal cantidad sea satisfecha o se haga incobrable por razón del transcurso de tiempo.

"Sección 3672: (a) Invalidez de gravamen no notificado. Tal gravamen no será válido contra ningún acreedor hipotecario, acreedor prendario, comprador o acreedor por sentencia mientras no se radique notificación del mismo por el Colector."

Se notará que este gravamen contributivo a favor de Estados Unidos surge automáticamente al tiempo en que la lista imponiendo la contribución sea recibida por el Colector. Sin embargo, el gravamen es efectivo, cuando el contribuyente omite pagar las contribuciones después de haber sido notificado de la imposición y del requerimiento de pago.

La prueba en este caso demuestra que los gravámenes contributivos a favor de Estados Unidos surgieron con anterioridad a la fecha en que Picart y Central Mercedita, Inc., formalizaron el contrato de construcción en junio de 1954, con excepción de la suma de $77.04. (La lista imponiendo la contribución por esta suma fue recibida por el Colector de Rentas Internas de Estados Unidos para Puerto Rico en agosto 4 de 1954.)

Generalmente esta clase de gravámenes contributivos son conocidos únicamente por el contribuyente deudor. Surge de un proceso interno de imposición por el Servicio de Rentas Internas que no lleva a un récord ni se hace público. En este respecto se le ha llamado corrientemente un gravamen secreto, sin registrarse. Sin embargo, bajo la ley federal, que

es la que gobierna su efectividad, se le ha considerado como un gravamen perfecto. *United States* v. *New Britain*, 347 U.S. 81, 98 L. Ed. 520. La ley guarda silencio en cuanto a que es propiedad o derecho de propiedad del contribuyente pero el Tribunal Supremo de los Estados Unidos ha resuelto que esa cuestión se rige por la ley local y no por la Ley Federal. *United States* v. *Bess*, 357 U.S. 51, 2 L. ed. 2d 1135.(⁴) La ley tampoco establece un orden de prelación entre ese gravamen contributivo y los demás gravámenes creados por los estatutos locales. Empero, se ha resuelto que la prioridad del gravamen contributivo a favor de Estados Unidos ha sido siempre una cuestión federal que corresponde resolverla finalmente a las cortes federales. *United States* v. *Acri*, 348 U.S. 211, 99 L. ed. 264. En el caso de New Britain, supra, se dijo que la regla de prioridad era la de "primero en tiempo, primero en derecho"; pero como veremos más adelante, la aplicación de dicha máxima está condicionada cuando se discute la prelación entre un gravamen contributivo federal y otro gravamen creado por un estatuto local a que este último sea perfecto y efectivo antes de que se haya hecho la imposición contributiva que es cuando surge el gravamen contributivo federal. Desde luego esta regla tiene las cuatro excepciones que señala el estatuto federal, en su sección 3672; contra quienes declara la invalidez del gravamen contributivo no notificado.(⁵)

---

(⁴) En este caso se dijo "Como la sección 3670 no crea derecho de propiedad, sino que fija consecuencias, federalmente definidas, a los derechos creados bajo la ley estatal, *Fidelity & Deposit Co.* v. *New York City Housing Authority*, 241 F.2d 142, 144, debemos examinar primero los derechos de Bess en la póliza, según éstos son definidos por la ley del estado."

(⁵) La ausencia de expresiones definidas en el estatuto federal tales como la definición de propiedad, orden de prioridad del gravamen contributivo, etc., ha dado margen a que surjan un gran número de problemas con los cuales se han enfrentado los tribunales creándose no poca confusión en sus decisiones. Véase Anderson, *Federal Tax Liens—Their Nature on Priority*, 41 Cal. L. Rev. 241; Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate Lien Problems*, 13 Tax L. Rev. 459; Wolson, *Federal Tax Liens—A Study on Confusion and Confiscation*, 43 Marq. L. Rev. 180.

Corresponde en primer lugar determinar si el remanente del 10% retenido por Central Mercedita, Inc., constituye "propiedad" del contratista Picart pues el gravamen contributivo federal sólo puede afectar los bienes o derechos sobre los mismos que pertenezcan al contribuyente deudor. Sección 3671, ante. ■

Picart terminó la construcción de la obra dentro del término pactado y fue entregada y recibida por la dueña. En su consecuencia, ésta venía obligada a liquidar y entregar a Picart el remanente del 10% retenido por aquélla. En ese sentido dicho remanente eran bienes o derechos sobre los mismos que correspondían a Picart y sobre los cuales gravita el gravamen contributivo a favor de Estados Unidos, aunque tales bienes los adquiriera Picart con posterioridad a la fecha en que surgió el gravamen contributivo. *Glass City Bank* v. *United States*, 326 U.S. 265. Por lo tanto queda por decidir si en el orden de prioridad debe prevalecer Estados Unidos de América o Royal Indemnity Co. ■

Hemos visto que esta compañía aseguradora reclama el remanente del 10% en subrogación de los derechos del contratista Sr. Picart y como cesionaria de dichos bienes y asimismo, que al finalizar la obra, Picart adeudaba ciertas sumas, por concepto de materiales suplidos a dos firmas comerciales. La Royal Indemnity Co. pagó a una de dichas firmas su acreencia y se obligó a pagar la suya a la otra. Todo esto, sin embargo, ocurrió después de haber surgido el gravamen federal sobre todos los bienes de Picart y de haber sido notificado el embargo a Central Mercedita, Inc. por el Colector de Rentas Internas de todos los derechos y acciones de Picart que surgían del contrato de construcción. ■

Las compañías de seguros que otorgan con sus fiados un documento de indemnización *(indemnity agreement)* como el envuelto en este caso, no tienen oportunidad de prevalecer frente a una reclamación opuesta de los Estados Unidos por contribuciones impuestas y no pagadas. Esto es así debido a la doctrina adoptada por las cortes federales respecto a la

perfección y efectividad de los gravámenes creados por las leyes estatales. Para que un gravamen privado pueda enfrentarse con éxito, en orden de prioridad, al gravamen contributivo federal, el gravamen privado, independientemente de su naturaleza bajo la ley local, debe ser en el concepto federal "perfecto" *(choate)* y al aplicar la regla de "primero en tiempo, primero en derecho", a un gravamen privado que compite con el gravamen contributivo federal, la prioridad del gravamen privado se considera a la fecha en que el mismo se ha convertido en perfecto *(choate)*. Desde luego, ya hemos dicho que la determinación de cuando un gravamen privado que compite en prioridad con el gravamen contributivo federal es efectivo y perfecto *(choate)* es una cuestión federal y no estatal. *United States* v. *Acri*, supra. Para que el gravamen privado se considere *choate*, debe reunir estos tres requisitos: *Primero:* que se establezca la *propiedad* sujeta al gravamen; *Segundo:* la identidad del dueño del gravamen, que debe ser cierto y definido; y *Tercero:* el gravamen privado debe ser por una cantidad exacta, que ha sido definitivamente fijada. *United States* v. *New Britain*, 347 U.S. 81.(⁶) Bajo esta doctrina el gravamen privado, aun cuando bajo la ley estatal tenga prioridad sobre todos los demás gravámenes, fracasa frente al gravamen federal por contribuciones, aun cuando éste haya surgido después del gravamen privado, y no sea el primero en tiempo. *United States* v. *White Beer Brewing Co.*, 350 U.S. 1010. El gravamen privado surge con todos sus efectos legales, en el momento en que se convierta en *choate* y no en ninguna fecha anterior, siendo una cuestión federal la determinación de si el gravamen privado cumple los requisitos de *"the choate lien doctrine"*. *United States* v. *Scovil*, 348 U.S. 218; *United States* v. *Security Trust & Savings Bank*, 340 U.S. 47.

---

(⁶) El término *choate* se viene usando por el Tribunal Supremo de los Estados Unidos desde el año 1950 en el caso de *United States* v. *Security Trust and Savings Bank*, 340 U.S. 47.

En este caso tanto Estados Unidos como Royal Indemnity Co., reclaman a través del contratista. Por lo tanto, la cuestión es una de prioridad entre ambos créditos. ■

Bajo la doctrina de *choateness* la Royal Indemnity Co., no puede prevalecer. El gravamen de Estados Unidos fue registrado mucho antes de que Picart terminara la obra. Para la fecha del registro del referido gravamen la cantidad que Royal Indemnity Co., venía obligada a pagar a los suplidores de materiales, por no haberlo hecho Picart, era incierta. Por lo tanto, el gravamen de Royal se consideraba imperfecto *(inchoate)* y en su consecuencia, sin prioridad sobre el gravamen de Estados Unidos. *United States* v. *R. Ball Construction Company,* 355 U.S. 587. ■

La situación de Royal Indemnity no cambiaría si reclamara en sustitución o subrogación de los derechos de los suplidores de materiales porque para la fecha en que se impuso el gravamen contributivo federal, el gravamen por materiales suministrados para la obra, no era definido ni perfecto, sino que era entonces un *"inchoate lien"*, y por lo tanto, no tenía prioridad sobre el gravamen federal.

*Por los motivos expuestos se confirmará la sentencia dictada por el Tribunal Superior.*