302

In re the BANK OF CALIFORNIA,
NATIONAL ASSOCIATION,
Plaintiff,

v.

UNITED STATES of America et
al., Defendants.

UNITED STATES of America,
Interpleader-Appellant,

v.

Murray S. WEBER,
Interpleader-Appellee.

No. 74-1261.

United States Court of Appeals,
Ninth Circuit.

July 8, 1975.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

Murray S. Weber, in pro. per.

OPINION

Before DUNIWAY and CHOY, Circuit Judges, and SKOPIL, District Judge *.

SKOPIL, District Judge:

The Bank of California (the Bank) filed this interpleader action to resolve competing claims of the U. S. Government (Government) and appellee, Murray S. Weber, to $25,000 of a fund held by the Bank. The Government appeals from the District Court order awarding the entire $25,000, plus interest, to Weber. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294.

The question presented is whether a holder of a foreign judgment becomes a "judgment lien creditor" under 26 U.S.C. § 6323(a) upon registration of the judgment before it becomes final in the registering state.

* Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

On April 28 and 29, 1965, the Government filed notices of tax liens against Peter Jacobsen for 1956 through 1958 income tax assessments and levied upon a fund (the Fund) of $118,536.25 held by the Bank in Portland, Oregon, for Jacobsen's account. The Bank was served with notices of the levy but withheld the Fund in apprehension of possible competing claims. (By stipulation of the parties, all but $25,000 of the Fund was released to satisfy the 1956–58 taxes which are no longer in dispute.)

The Government made further income tax assessments against Jacobsen for the years 1959 through 1964 and filed lien notices under those assessments on April 22, 1969. The Government notified the Bank of that lien on May 1, 1969, but did not file notice in the District of Columbia, as Section 6323(f)(2) requires in the case of a taxpayer residing outside the United States, until January 13, 1970. At that time Jacobsen resided in Australia.

Weber's competing claim is based on a California court judgment on confession against Jacobsen entered April 18, 1969. On April 22, 1969, Weber filed a petition and motion to register the judgment in Oregon under the Uniform Enforcement of Foreign Judgments Act. O.R.S. 24.-010 et seq. Also on April 22, 1969, the Oregon court entered an "Order for Registration of Judgment" and issued an "Execution" and a "Notice of Garnishment", which were served on the Bank in Portland. That court entered an "Order for Final Registration of Judgment" on January 5, 1973.

In the interpleader action filed on April 1, 1971, Weber claimed priority over the Government's tax liens. He argued that he was a "judgment lien creditor" under Section 6323(a) of the Internal Revenue Code by virtue of the Oregon writ of execution issued before the Government filed notice required by Section 6323(f)(2).

The Government contended that Weber did not become a judgment lien creditor under Section 6323(a) until the regis-tered California judgment became a final judgment in Oregon because only then could a perfected judgment lien attach to the property in Oregon.

The District Court held that Weber became a judgment lien creditor in Oregon before the Government perfected its tax lien for 1959–1964. We agree.

The conflict between the federal tax lien and the state lien arises under 26 U.S.C. § 6323(a), which states:

"The [federal tax] lien . . . shall not be valid as against any . . . judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate."

Subsection (f) requires notice of a lien on personal property to be filed in the state in which the property is situated. Personal property is deemed situated in the state in which a taxpayer resides or, if the taxpayer resides outside the United States, in the District of Columbia.

Although the particular question here is one of first impression, principles established under the federal choateness doctrine govern its resolution generally:

"As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule 'first in time is first in right,' which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was 'specific and perfected.' A state lien is specific and perfected when 'there is nothing more to be done . . . —when the identity of the lienor, the property subject to the lien and the amount of the lien are established.' 'Thus, the priority of each statutory lien . . . must depend on the time it attached to the property in question and became choate.' *United States v. New Britain* [347 U.S. 81, 84, 86, 74 S.Ct. 367, 98 L.Ed. 520 (1954)]. These determinations are of course federal questions. *United States v. Waddill, Holland & Flinn, Inc.*, 323 U.S. 353, 356–357, 65 S.Ct. 304, 306, 89 L.Ed. 294 (1945)." *United States v. Equitable Life Assur-*

*ance Society,* 384 U.S. 323, 327–28, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593.

The critical turn in the Government's course of reasoning is its argument that Weber did not become a judgment lien creditor until the final Oregon judgment on his petition to register the California judgment because he lacked legal authority to dispose of the Fund before that time. Registration of the California judgment only gave him authority to levy on the Fund. O.R.S. 24.030, 24.060, 24.130.

The Government argues that an Oregon lien is not perfected against a federal tax lien until the lienor can actually seize the property. *Bank of Lebanon v. J. & W. Lumber Co.,* 252 Or. 407, 448 P.2d 367 (1968). The Government contends that *Bank of Lebanon* held that no seizure may be made without a final Oregon judgment.

*Bank of Lebanon* is distinguishable on its facts. It was not concerned, as we are, with a judgment lien. That case involved a state administrative lien upon which no seizure can be made until the lien is perfected by a court decree.

Weber's petition could support a seizure without such a decree. He was restricted only from disposing of the property without one. *Hehr v. Tucker,* 256 Or. 254, 472 P.2d 797 (1970). In *Hehr* the Court stated that

> "The right to levy under the above statute is the same right that the holder of a domestic judgment has against the property of a judgment debtor. ' * * * [T]he rights of the judgment creditor are those which stemmed from the procedure appropriate to garnishment after, not before, judgment.' "

The Government contends that this language is deceptively broad because it was fashioned to avoid *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), due process problems. According to the Government, the Oregon registration statutes do not equate the rights of a foreign judgment holder with those of a domestic judgment holder.

Weber complains that the Government's challenge to the quality of his lien is based upon hair-splitting technical distinctions which are misleading and alien to the spirit of governing treasury regulations.

> "The determination of whether a person is a . . . judgment creditor, entitled to the protection of Section 6323(a) shall be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person." Reg. § 301.6323–1(a)(2)(ii).

Weber claims he held a valid judgment lien by satisfying the three requirements of the choateness doctrine: he had (1) a valid judgment in a court of record and of competent jurisdiction (2) to recover specifically designated property or for a certain sum of money, and (3) he perfected a lien upon such judgment on the property involved. Reg. § 301.6323–1(a)(2)(i)(b).

We agree. The Oregon petition for registration was vulnerable to challenge only on limited grounds such as fraud or lack of jurisdiction. *Gipson, et al. v. Epps,* 352 S.W.2d 45, 49 (Mo.App.1961); see 50 C.J.S. Judgments § 891.

The attachment lien in *United States v. Security Trust and Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), is clearly distinguishable from Weber's lien. There the attachment lien had not yet ripened into a judgment. It was "merely a *lis pendens* notice that a right to perfect a lien [existed]". 340 U.S. at 50, 71 S.Ct. at 113.

Although the federal tax lien statute is intended to secure "prompt and certain collection of taxes due the United States from tax delinquents", Congress has harnessed that collection power against judgment creditors with the requirement that prior notice be given. 340 U.S. at 51–52, 71 S.Ct. 111. Under the Oregon version of the Uniform Enforcement of Foreign Judgments Act, Weber's lien has substantially the same status as a domestic judgment. While technical considerations leave this case in

precarious balance, the "realities and the facts" give decisive weight to the taxpayer's position.

The judgment of the District Court is affirmed.