**Andres PALANDJOGLOU, Trustee**

v.

**UNITED NATIONAL INSURANCE COMPANY, Club Casino, Inc., Casino Club, Inc., the United States Department of the Treasury, and the Internal Revenue Service.**

**Civ. A. No. H–91–1198.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 21, 1993.

Theo W. Pinson, III, Pinson & Bussey, Houston, TX, for plaintiff.

John Murray, Ramsey & Murray, Houston, TX, Joseph A. Pitzinger, III, Dept. of Justice, Tax Div., Dallas, TX, for defendants.

## MEMORANDUM

HARMON, District Judge.

This action is before the Court on United National Insurance Company's ("United National") Bill of Interpleader. Pending before the Court is the Motion for Summary Judgment (Instrument No. 11) of Andres Palandjoglou, Trustee ("Palandjoglou"). Also pending before the Court is the Cross Motion for Summary Judgment (Instrument No. 14) of the United States. Having considered the cross motions, the record, and the applicable law this Court is of the opinion that the United States' motion should be granted and Palandjoglou's motion should be denied.

## I. BACKGROUND

This action was removed by the United States from the 164th Judicial District Court

of Harris County, Texas, Cause No. 85–09358–C. Neither United National nor Palandjoglou has moved this court for remand.

Palandjoglou obtained a judgment (the "underlying judgment") on December 11, 1985, of $1,281,805.82 against Club Casino Inc., ("Club Casino"). An Abstract of Judgment was indexed on January 14, 1986.

Also in 1985 United National had instituted suit in federal court for a declaratory judgment to determine whether Club Casino, Inc., was entitled to insurance proceeds claimed for fire damages. United National's position was that the policy was void. On April 7, 1987, Palandjoglou effected service of a Writ for Post–Judgment Garnishment on United National seeking to garnish the proceeds of the insurance policy in dispute in the federal court declaratory judgment action.

The writ of garnishment was filed by Palandjoglou on February 25, 1987. It did not provide for an answer date nor did it command the garnishee, United National, to answer under oath on or before that date. *See* Tex.R.Civ.P. 659. Although the application states that Palandjoglou has a final liquidated judgment against Club Casino and that to Palandjoglou's knowledge the debtor does not possess property in Texas subject to execution sufficient to satisfy the debt, it does not state "that garnishment is not sought to injure the debtor or garnishee" as required by the garnishment statute. Tex.Civ.Practice & Rem.Code § 63.001(2).[1] On April 1, 1991, the United States was served with a Bill of Interpleader that sought to determine who has priority in the distribution of insurance proceeds. This bill was filed pursuant to a settlement agreement reached in a separate lawsuit. *See infra* at 1181.

On January 28, 1991, a settlement was reached in the declaratory judgment suit. As part of the settlement United National paid Club Casino, Inc. a sum of money and agreed to interplead the remaining monies, some $356,084.07 (the "settlement"), into the Registry of the Court.

Palandjoglou asserts that since he filed a post-judgment writ of garnishment against United National on February 25, 1987, to obtain funds which he claims represent monies to which United National is indebted to Club Casino, Inc., he believes that his writ was effective from the date it was filed and that it has priority over federal tax liens. United National had maintained that the policy was void and that for that reason it did not hold any funds to garnish. The Internal Revenue Service adopts that view, maintaining that, until the settlement of the lawsuit, any amount allegedly owed by United National to Club Casino was unliquidated.

The Internal Revenue Service ("IRS" or "government") claims that through its federal tax liens it has priority over the interplead funds. As of April 14, 1992, Club Casino, Inc., had the following unpaid balance to the IRS: (1) for the period ending 3–31–84, $31,417.78; (2) for the period ending 6–30–84, $98,971.17; (3) for the period ending 9–30–84, $17,398.62; and (4) for the period ending 12–31–84, $22,158.98. United States' Cross Motion for Summ.J. at Ex. 1; Certificates of Assessments and Payments dated April 14, 1992.

On October 11, 1984 the Internal Revenue service filed a Notice of Federal Tax Lien in Harris County, Texas for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84 and 6–30–84. United States' Cross Motion for Summ.J. at Ex. 2, p. 1; Federal Lien Facsimile Document at p. 1. On April 3, 1986 the Internal Revenue service filed another Notice of Federal Tax Lien in Harris County, Texas for the unpaid tax liabilities of Club Casino, Inc. for the period ending 12–31–84. United States' Cross Motion for Summ.J. at Ex. 2, p. 3; Federal Lien Facsimile Document at p. 3. On July 23, 1987 the Internal Revenue service filed its last Notice of Federal Tax Lien in Harris County, Texas for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84, 6–30–84, and 9–30–84. United States'

---

1. The statute is clear that one must articulate that the garnishment is not made to injure the garnishee. The statute does not predicate the need for this statement on whether the garnishment is made antecedent or subsequent to a judgment being rendered, since the garnishee could be injured in any event.

Cross Motion for Summ.J. at Ex. 2, p. 2; Federal Lien Facsimile Document at p. 2.

On October 15, 1984, the Internal Revenue service filed a Notice of Federal Tax Lien with the Texas Secretary of State for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84 and 6–30–84. United States' Cross Motion for Summ.J. at Ex. 2, p. 4; Federal Lien Facsimile Document at p. 4. On March 27, 1986, the Internal Revenue service filed another Notice of Federal Tax Lien with the Texas Secretary of State for the unpaid tax liabilities of Club Casino, Inc. for the period ending 12–31–84. United States' Cross Motion for Summ.J. at Ex. 2, p. 5; Federal Lien Facsimile Document at p. 5. On July 23, 1987, the Internal Revenue Service filed its last Notice of Federal Tax Lien with the Texas Secretary of State for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84, 6–30–84, and 9–30–84. United States' Cross Motion for Summ.J. at Ex. 2, p. 6; Federal Lien Facsimile Document at p. 6.

Palandjoglou was not disputed the adequacy of these Notices of Tax Lien.

On October 20, 1987, the IRS served a Notice of Levy on United National which purported to levy "all property rights to property, money, credits, and bank deposits now in your possession and belonging to [Club Casino]. . . ." Notice of Removal Ex. A, p. 4; Bill of Interpleader at p. 4. The IRS argues that its liens are superior to the writ served by Palandjoglou on April 7, 1987, in the interplead property, in part, because United National's indebtedness to Club Casino was not fixed until the January 28, 1991 settlement. On January 30, 1991 the IRS issued a second Notice of Levy updating the earlier levy.

Palandjoglou argues that United National's July 27, 1987 answer to the writ of garnishment was insufficient to controvert Palandjoglou's writ in that it was not made under oath. He argues that he is entitled to judgment on his writ by default. Palandjoglou's Mot. for Summ.J. at 3. Palandjoglou makes this argument nearly five years after the answer was filed. Palandjoglou is also cognizant that the underlying dispute as to the indebtedness of United National to Club Casino, Inc., was settled in January 1991.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. See *International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. *Id.*

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See *Celotex,* 477 U.S. at 322–325, 106 S.Ct. at 2552–2554. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. *Williams v. Weber Management Serv.,* 839 F.2d 1039,

1041 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the nonmoving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987). Bare or mere allegations are insufficient. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

■ In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. The evidence of the nonmovant is not to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 254–255, 106 S.Ct. at 2513–2514. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–590, 106 S.Ct. 1348, 1356–1358, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir.1987).

### B. *The Applicable Law*

In an attempt to consider the issues presented in a coherent fashion this Court will deal with the liens in chronological order. The parties to this action have merely lumped the federal taxes liens together; such a practice does not lend itself to an orderly and comprehensive resolution of the case. The facts of this case are largely undisputed. The legal effect given those facts is the subject of the conflict.

The rules of law set forth in this case conveniently build on each other; each subsequent lien refers to and builds upon the law resolving the earlier lien.

1. The Government's 1984 Liens for periods ending 3–31–84, 6–30–84

■ As noted above, on October 11, 1984 the Internal Revenue service filed a Notice of Federal Tax Lien in Harris County, Texas for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84 and 6–30–84. On October 15, 1984 the Internal Revenue service filed a Notice of Federal Tax Lien with the Texas Secretary of State for the unpaid tax liabilities of Club Casino, Inc. for the periods ending 3–31–84 and 6–30–84. As of April 14, 1992, the government was owed $31,417.78 and $98,971.17 for the periods ending 3–31–84 and 6–30–84, respectively.

It was not until more than a year after these Notices were filed that Palandjoglou obtained the main judgment on December 11, 1985 against Club Casino Inc. The Abstract of Judgment was not indexed until January 14, 1986.

> [U]nder 26 U.S.C. § 6323(a), certain persons are protected against unrecorded federal tax liens. Section 6323(a) provides:
>
>> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary.
>
> Only those persons specifically listed in the statute are entitled to priority over unrecorded federal tax liens. *See* 14 Mertens, Law of Federal Income Taxation § 15A.03, at 15–16 (1991).

*Don King Productions, Inc. v. Thomas*, 945 F.2d 529, 533 (2nd Cir.1991).

> For all persons who are not specifically listed in section 6323, priority as a lienor is determined by the common law rule of "first in time is the first in right." *United States v. City of New Britain*, 347 U.S. 81, 87–88, 74 S.Ct. 367, 371–372, 98 L.Ed. 520 (1954). Under that rule, a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien. *See id.* at 86, 74 S.Ct. at 370. Not only does a lienor's interest have to be first chronologically, but the interest must be choate to defeat the federal tax lien. A choate lien is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established. *Id.* at 84, 74 S.Ct. at 369. A lien that is "choate" has been described as a lien that is "specific and perfected" and for which

"nothing more [need] be done." *United States v. Equitable Life Assurance Society,* 384 U.S. 323, 327–28, 86 S.Ct. 1561, 1563–64, 16 L.Ed.2d 593 (1966) (citation omitted).

*Don King Productions, Inc. v. Thomas,* 945 F.2d 529, 533–34 (2nd Cir.1991).[2]

In 1984 Palandjoglou was not a judgment lien creditor; at that point there was no judgment to execute. It can also be said that at that time Palandjoglou did not have a choate lien. Invoking the "first in time" rule the dispositive element with regard to the 1984 federal tax liens is that they were recorded well before Palandjoglou received a favorable judgment and became a judgment lien creditor. Therefore, of the $356,084.07 now held in the registry of the Court the IRS is clearly entitled to the 1984 lien amounts of $31,417.78 and $98,971.17.

2. The Government's 1986 Lien for the period ending 12–31–84

■ Palandjoglou obtained the underlying judgment on December 11, 1985 against Club Casino Inc. The Abstract of Judgment was not indexed until January 14, 1986. Palandjoglou served a writ of garnishment on United National on April 7, 1987. United National disputed the amount owed, but on January 28, 1991, the parties reached an agreement settling the amount of indebtedness.

After the abstract of judgment was filed but before filing the writ of garnishment the IRS filed a Notice of Federal Tax Lien in Harris County, Texas, on April 3, 1986, for the unpaid tax liabilities of Club Casino, Inc., for the period ending 12–31–84. Along with filing the tax lien in Harris County the Internal Revenue Service filed Notice of Federal Tax Liens with the Texas Secretary of State for the unpaid tax liabilities of Club Casino, Inc. for that period.

2. While the "first in time" rule is apropos in this instance such is not always the case. Its use must be distinguished from those situations where it is not applicable. This division will be described in further detail below.

3. Liens under a "priority statute also need[] to be choate in order to prime a filed federal tax

The issue presented at this point is whether Palandjoglou is a judgment lien creditor or whether priority is determined by the common law rule of "first in time."

A "judgment lien creditor," [3] undefined by statute, is described in the Treasury regulations as

a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. *A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established.* Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved. The term "judgment" does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity such as the action of State taxing authorities.

lien." *McDermott v. Zions First National Bank,* 945 F.2d 1475, 1479 n. 6 (10th Cir.1991) (citing *United States v. Security Trust & Sav. Bank, Executor,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963)).

See 26 C.F.R. § 301.6323(h)–1(g) (emphasis added). *Cf. United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955) (attachment lien not choate because fact and amount of lien contingent); *Security Trust,* 340 U.S. at 50, 71 S.Ct. at 113 (attachment lien "merely a lis pendens notice that a right to perfect a lien exists").
*McDermott v. Zions First National Bank,* 945 F.2d 1475, 1480 (10th Cir.1991).

"In determining ... whether a judgment creditor's lien is perfected ..., we look first to the local law setting forth the lien procedure and its legal consequences." *Don King Productions, Inc. v. Thomas,* 945 F.2d at 533 (quoting *Hartford Provision Co. v. United States,* 579 F.2d 7, 9 (2d Cir.1978)).

Under the federal revenue statute, federal law determines the rights of priority among competing lienors; however, [as noted,] state law controls in determining the nature of a taxpayer's interest in property. *SEC v. Levine,* 881 F.2d 1165, 1175 (2d Cir.1989); *see also National Bank of Commerce,* 472 U.S. [713] at 722, 105 S.Ct. [2919] at 2925 [86 L.Ed.2d 565]; *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). "[W]hether the [federal] tax lien has attached depends on the state law question of ownership, since the lien can only attach to property that the taxpayer owns." *United States v. Fontana,* 528 F.Supp. 137, 143 (S.D.N.Y.1981). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925 (quoting *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)).
*Don King Productions, Inc. v. Thomas,* 945 F.2d at 534.

In analyzing the facts of this case with respect to local law it is clear that Palandjoglou was not a judgment lien creditor when his abstract of judgment was entered. " 'In order to perfect a judgment lien in Texas on personal property, a form of execution such as garnishment is required; no lien on the personal property of the debtor is created by filing an abstract of judgment.'" *United States v. Bollinger Mobile Home Sales,* 492 F.Supp. 496, 497 (N.D.Tex.1980) (citing *Donley v. Youngstown Sheet and Tube Co.,* 328 S.W.2d 192 (Tex.Civ.App.—Eastland 1959, writ ref'd n.r.e.)). The Abstract of Judgment indexed on January 14, 1986, was ineffectual to perfect a lien on personal property.

Since Palandjoglou cannot claim the protection of § 6323(a) because his lien was not perfected, priority is determined by the common law rule of "first in time is the first in right." *See, infra* at 1183–84.

When the government filed its notices for the period ending 12–31–84 in late March and early April 1986, that lien achieved priority. Although the abstract of judgment was filed first it was worthless for the objectives of this case. Although Palandjoglou filed his writ of post-judgment garnishment on February 25, 1987, clearly the IRS was "first in time." "If the garnishment lien is not prior to the Government liens," "the tax Liens of the United States [are] superior to the lien of the garnishor." *United States v. Liverpool & London & Globe Ins. Co.,* 348 U.S. 215, 217, 75 S.Ct. 247, 248, 99 L.Ed. 268 (1955) (payment of attorney's fees) (citing *United States v. Security Trust & Sav. Bank, Executor,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950)); *see also United States v. Ray Thomas Gravel Co., Inc.,* 380 S.W.2d 576, 580 (Tex.1964). The IRS is entitled to $22,158.98 for taxes and penalties accruing from the period ending 12–31–84.

3. The 1987 Lien

■ On July 23, 1987 the Internal Revenue service filed its last Notice of Federal Tax Lien in Harris County, Texas for the unpaid tax liabilities of Club Casino, Inc. for the period ending 9–30–84.[4] Simultaneously, the Internal Revenue service filed Notice of Federal Tax Liens with the Texas Secretary

---

4. On that date the IRS filed a notice for periods ending 3–31–84 and 6–30–84. Those periods were recorded earlier and the Trustee has pre-

sented no summary judgment evidence that requires this Court to discussed those liens again.

of State for the unpaid tax liabilities of Club Casino, Inc. for that period.[5]

Palandjoglou argues that his writ, filed on February 25, 1987, has priority over the notice of federal tax liens filed on July 23, 1987.

In addition Palandjoglou contends that he is entitled to a default because United National's answer is defective. This contention will be resolved first.

■ Palandjoglou's own writ is also riddled with procedural infirmities. Substantive errors that are not fundamental or jurisdictional may be waived, however, if objection is not made to them in a timely and proper manner. *See Sherry Lane National Bank v. Bank of Evergreen,* 715 S.W.2d 148, 150–51 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *see also Hudler–Tye Const. v. Pettijohn, Etc.,* 632 S.W.2d 219, 222–23 (Tex.App.—Fort Worth 1982, no writ). Since all parties have delayed in raising the procedural defects in the writ and answer they are deemed waived.

■ While it may appear that Palandjoglou's writ, when filed, established him as a judgment lien creditor impervious to the government's succeeding liens, such is not the case. A "service of a writ of garnishment creates a lien on property subject to such writ of garnishment from the date of the service of the writ." *Matter of T.B. Westex,* 950 F.2d 1187, 1191 (5th Cir.1992) (quoting *United States v. Standard Brass & Mfg.,* 266 S.W.2d 407, 408 (Tex.Civ.App.1954)). Yet, a proper writ of garnishment may not impound a contingent debt. In the case at hand Palandjoglou sought to garnish the proceeds of an insurance policy which were the subject of litigation. Any contingency not resolved prior to the due date for the garnishee's answer will prevent impoundment, even if the contin-

gency is later eliminated, and the debt to the debtor rendered certain. *Houston Drywall, Inc. v. Construction Systems, Inc.,* 541 S.W.2d 220, 222 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *see also United States v. Bollinger Mobile Home Sales,* 492 F.Supp. 496, 497 (N.D.Tex.1980) (citing *Alexander v. Berkman,* 3 S.W.2d 864, 867 (Tex.Civ.App.—Waco 1927, writ ref'd)).

"Texas court's have consistently held that a demand … is not subject to garnishment until the judgment becomes final in the sense that it can neither be set aside or reversed on appeal." *Commercial Credit Corp. v. U.S. Fire Ins.,* 630 S.W.2d 651, 652 (Tex.App.—Houston [1st Dist.] 1981, no writ). *Commercial Credit Corp.,* is factually similar to the case at hand. In *Commercial Credit Corp.,* the debtors had many judgments against them. The debtors sole asset was a disputed claim for theft losses. The debtors were awarded a judgment against two insurance companies and their three creditors sought to garnish the proceeds of the insurance companies indebtedness. Meanwhile the insurance company appealed unsuccessfully. At the conclusion of the appeal the insurance companies were faced with competing writs and filed an interpleader action. The appellate court held that the creditors' writs of garnishment reached nothing; before final disposition of the case the claim was unliquidated and not subject to garnishment. *Commercial Credit Corp. v. U.S. Fire Ins.,* 630 S.W.2d at 652; *see also Industrial Indemnity Co. v. Texas Am. Bank—Riverside,* 784 S.W.2d 114, 120 (Tex.App.—Fort Worth 1990) (distinguishing *Commercial Credit Corp.,* noting that there was every indication that the claim there was unliquidated and not subject to garnishment); *but see id.* at 122.[6]

---

5. See note 5.

6. *Industrial Indemnity,* also found that a 1978 amendment to the Texas Rules of Civil Procedure nullified the rule that unliquidated claims are not subject to garnishment.

In 1978 the Texas Supreme Court added a sentence to the "form of writ" of garnishment. Tex.R.Civ.P. 661. The sentence read: "[y]ou are further commanded NOT to pay to defendant any debt or to deliver to him any effects, pending further order of this court." *Id. Industrial Indemnity,* interpreted the significance of this addi-

tion to suggest that a garnishee must preserve the claims, "including unliquidated and uncertain claims, for determination and further order of the court issuing the writ. If this was the intention, then we surmise that the express language in the amendment to rule 661 to that extent overrides the holding in *Waples.*" 784 S.W.2d at 122 (emphasis added). Undoubtedly, the appellate court was unsure and hesitant, for in its own words *Waples* is a "landmark case" that stands for the proposition that a writ of garnishment cannot reach a debt that is unliquidated. *Waples–Platter Grocer Co. v. Texas & P. Ry. Co.,* 95 Tex. 486, 68 S.W. 265, 266 (1902).

In the present case Palandjoglou was awarded a judgment for over one million dollars against Club Casino. Club Casino sued United National for the proceeds of an insurance policy. United National disputed the claim of loss. While the dispute between Club Casino and United National was in litigation Palandjoglou sought a writ of garnishment. It is clear that until the settlement the claim was uncertain and therefore unliquidated. In other words the claim was inchoate and not subject to garnishment.

Inasmuch as the indebtedness failed to become choate in the time required for United National to answer, Palandjoglou's writ must dissolve. *Commercial Credit Corp. v. U.S. Fire Ins.*, 630 S.W.2d at 653.[7] Although

---

With one broad stroke *Industrial Indemnity* attempted to eradicate nearly one hundred years of settled garnishment jurisprudence. *See Commercial Credit Corp. v. U.S. Fire Ins.*, 630 S.W.App.—Houston [1st Dist.] 1981, no writ); *United States v. Bollinger Mobile Home Sales*, 492 F.Supp. 496, 497 (N.D.Tex.1980); *United States v. Wakefield*, 572 S.W.2d 569, 571 (Tex.Civ.App.—Fort Worth 1978, writ dism'd); *Houston Drywall, Inc. c. Construction Systems, Inc.*, 541 S.W.2d 220, 222 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Clapper v. Petrucci*, 497 S.W.2d 120, 122 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.); *Hofmann Paint Mfg. Co. v. Paint Cottage, Inc.*, 473 S.W.2d 954, 956 (Tex. Civ.App.—Austin 1971, no writ); *First National Bank in Dallas v. Lampman*, 442 S.W.2d 858, 862 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.); *Burkitt v. Glenney*, 371 S.W.2d 412, 414 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.); *Alexander v. Berkman*, 3 S.W.2d 864, 867 (Tex. Civ.App.—Waco 1927, writ ref'd); *Waples–Platter Grocer Co. v. Texas & P. Ry. Co.*, 95 Tex. 486, 68 S.W. 265, 266 (1902). To accomplish this act the *Industrial Indemnity* court merely cited the language of Rule 661 and nothing more. That one sentence amendment did not purport to accomplish such an weighty task. If the Texas Supreme Court sought to achieve that result it surely would have noted its intentions. The *Industrial Indemnity* decision on this issue has not been followed by other courts.

Absent a definitive statement from the Texas Supreme Court this Court must determine how the Supreme Court would rule. It is abundantly clear from the language of the amendment that the Supreme Court was merely incorporating a longstanding principle into Rule 661; a garnishee may not prejudice the rights of the garnishor by transferring any of the indebtedness belonging to the defendant after service of process and during the pendency of the suit; any such transfer is done at the garnishee's peril. *Matter of Bohart*, 743 F.2d 313, 324 (5th Cir.1984); *see also Westridge Villa Apts. v. Lakewood Bank & Trust Co.*, 438 S.W.2d 891, 894 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.). Additional confirmation of this determination is verified by the language of Tex.Civ.Prac. & Rem.Code Ann. § 63.003(a), the section entitled "Effect of Service". The language of the first sentence of the statute, is substantively identical to the amendment. The statute reads: "[a]fter service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant." Tex.Civ.Prac. & Rem.Code Ann. § 63.003(a). It

is clear that the amendment merely seeks to protect the garnishor should the garnishee seek to transfer the indebtedness. *See* Tex.R.Civ.P. 661.

**7.** *Contra Phoenix Ins. Co. of Brooklyn v. Willis*, 70 Tex. 12, 6 S.W. 825, 829 (1888); *Gordon v. Litwood Oil & Supply Co.*, 261 S.W. 400 (Tex.Civ. App.—San Antonio, 1924) (citing *Phoenix* ). This Court is loath to regard these cases as stale since Texas courts typically refer to centuries old cases to resolve garnishment issues. These cases, however, have lost their precedential value with respect to this discrete issue; present day appellate courts have taken a different approach with regard to contingent or unliquidated claims. *See generally Commercial Credit Corp. v. U.S. Fire Ins.*, 630 S.W.2d at 652. *Phoenix Ins. Co. of Brooklyn v. Willis*, held that a garnishment is not premature when an event triggers the policy since the insurance agreement is no longer contingent, but becomes absolute, "subject to be defeated, however, by defenses pleaded and proven...." 6 S.W. at 829. The Court found that "the issuance of a writ of garnishment is not, strictly speaking, an action for the recovery of a debt; but is more in the nature of a bill of discovery, and may be filed in anticipation that a debt or obligation will mature at some future time. This practice is evidently contemplated by our statute of garnishment." *Phoenix Ins. Co. of Brooklyn v. Willis*, 6 S.W. at 829. It is clear that statutes evolve, and new interpretations result. This Court trusts that the Texas Supreme Court would rule in a similar manner given the overwhelming amount of relatively recent case law ruling that inchoate and unliquidated claims may not be garnished.

[The Fifth Circuit's] interpretation of the law of garnishment is consistent with the treatment of garnishment as a quasi in rem proceeding. *See United States Rubber Co. v. Poage*, 297 F.2d 670, 673 & 673 n. 5 (5th Cir.1962) (" 'In every practical sense, [garnishment] amounts to a seizure of the thing.' " (quoting *Pennsylvania R. Co. v. Rogers*, 52 W.Va. 450, 44 S.E. 300, 302 (1903))). The proceeding is operative in personam against the garnishee to prevent him from paying the debt to the garnishment debtor and "is operative in rem upon the property of the defendant debtor in the hands of the garnishee." *Citizens Nat'l Bank in Ennis v. Hart*, 321 S.W.2d 319, 320–21 (Tex.Civ.App. 1959) (emphasis added).
*Matter of T.B. Westex*, 950 F.2d at 1192 n. 7.

1188

the Palandjoglou's interest in the competing funds for the 1987 lien were first chronologically, the interest was inchoate and did not defeat the federal tax lien. *United States v. City of New Britain*, 347 U.S. at 84, 74 S.Ct. at 369; *Don King Productions, Inc. v. Thomas*, 945 F.2d at 533–34. *See generally MDC Leasing Corp. v. New York Property Insurance Underwriting Assoc.*, 603 F.2d 213 (2d Cir.1979), *affirming without opinion* 450 F.Supp. 179, 181 (S.D.N.Y.1978) (The court of appeals affirmed a district court opinion holding that an assignment of insurance proceeds not reduced to judgment is not sufficiently choate to prime a federal tax lien).

The Government is entitled to recover $17,398.62 for the period ending 9–30–84.

The remaining funds in the registry of the court, if any, will first satisfy any additional tax penalties. Next, the funds will recompense United National for $2,825.88 in attorney's fees pursuant to the parties' stipulation. The remaining sums shall inure to the benefit of Palandjoglou.

## III. CONCLUSION

This Court having considered all the issues presented concludes, for the reasons set forth above, that the Government's motion should be GRANTED and Palandjoglou's motion should be DENIED.

Although garnishment may be in the nature of a bill of discovery, viewing the Fifth Circuit's characterization, it seems that the emphasis may have shifted slightly; garnishment is fundamentally a mode of enforcing an execution of a court's judgement.